Brenda **JOHNSON**, a Minor, b/n/f Marla **JOHNSON**, and Marla Johnson and Charles W. Johnson, Individually, Plaintiffs–Appellants,

v.

**CITY OF SPRINGFIELD**, Missouri, Defendant–Respondent.

No. 17456.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 17, 1991.

Motion for Rehearing or Transfer Denied Oct. 9, 1991.

Application to Transfer Denied Nov. 19, 1991.

2. Defendant's motion requesting this court take judicial notice of certain records on appeal in other cases is denied.

John O. Newman, Ramsdell & Corbett, Springfield, for plaintiffs-appellants.

Dennis Budd, Asst. City Atty., Springfield, for defendant-respondent.

SHRUM, Presiding Judge.

The plaintiffs Brenda Johnson, a minor, and her parents Marla Johnson and Charles W. Johnson, appeal from a judgment dismissing their petition for damages arising from injuries sustained by Brenda when she was struck by a motor vehicle on a public street in the defendant City of Springfield, Missouri.

The issue is whether the plaintiffs alleged facts sufficient to plead that the City waived sovereign immunity under § 537.-600.1(2), RSMo 1986. Because we conclude the petition does not allege facts that properly plead a dangerous condition of a public entity's property, we affirm.

## FACTS

In their petition the plaintiffs alleged that on September 15, 1989, Brenda sustained personal injuries when she was struck by a motor vehicle driven by Kevin R. Lawmaster while she was attempting to cross East Avenue in Springfield. In paragraphs 6(a)–(h), the plaintiffs alleged that East Avenue was in an "unreasonably dangerous condition" because (a) it had a high volume of vehicle and pedestrian traffic, (b) vehicles parked along the street blocked motorists' view of children and children's view of vehicles, and when children walked from behind parked vehicles into East Avenue, motorists traveling at the posted 30 m.p.h. speed limit could not stop in time to avoid striking them, (c) many children played in the area, (d) Brenda was not warned of the dangerous condition of the street, (e) motorists were not warned to reduce speed, (f) parked vehicles prevented motorists from keeping a careful lookout, (g) motorists were not warned of children playing in the area, and (h) a safe speed limit was not posted. At the end of paragraph 6(h) of the petition, the plaintiffs added this parenthetical statement: "(The foregoing is referred to as a dangerous condition.)."

The plaintiffs also alleged that Brenda's injuries directly resulted from the dangerous condition, that the risk of harm to Brenda from the dangerous condition was reasonably foreseeable, and that the City had actual or constructive knowledge of the dangerous condition because of an earlier child-pedestrian accident and numerous complaints by East Avenue residents about the dangers to children. In short, the plaintiffs sought to plead the "dangerous condition" waiver of sovereign immunity. See § 537.600.1(2), RSMo 1986.[1]

---

1. Section 537.600.1(2) waives governmental tort immunity as it existed at common law prior to

September 12, 1977, for "Injuries caused by the condition of a public entity's property if the

The City moved to dismiss the petition for failure to plead waiver of statutory sovereign immunity and, therefore, failure to state a claim upon which relief could be granted. The trial court sustained the motion and the plaintiffs appealed.

## SCOPE OF REVIEW

In reviewing the dismissal of a petition, we treat all alleged facts as true and construe the allegations favorably to the plaintiffs to determine whether they invoke principles of substantive law that would entitle them to relief. *Lowrey v. Horvath,* 689 S.W.2d 625, 626 (Mo. banc 1985). A petition must inform the defendant of what the plaintiffs will attempt to establish at trial. *Matyska v. Stewart,* 801 S.W.2d 697, 699–700 (Mo.App.1991). We will affirm a dismissal only if the plaintiffs could not recover on any theory pleaded. *Id.* at 700.

## DISCUSSION AND DECISION

■ A plaintiff seeking to plead a waiver of sovereign immunity under § 537.600.1(2) must allege facts that demonstrate:

(1) a dangerous condition of the property; (2) that the plaintiff's injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition.

*Kanagawa v. State by and through Freeman,* 685 S.W.2d 831, 834–35 (Mo. banc 1985). The dispositive issue in the case before us is whether the plaintiffs' allegations plead a "dangerous condition" as that term is used in the statute.

In *Twente v. Ellis Fischel State Cancer Hosp.,* 665 S.W.2d 2 (Mo.App.1983), the plaintiff was assaulted and raped on the parking lot of the hospital where she was employed. She alleged the hospital park-

ing lot was in a dangerous condition because hospital officials were aware other rapes and assaults had been committed there and because the security guard was not at his post when the plaintiff was assaulted. In rejecting her claim, the court pointed out, "The statute does not say that the negligent or wrongful act or omission of an employee, or the actual or constructive notice are unto themselves a 'dangerous condition.'" *Id.* at 11. The court concluded "the General Assembly ... limited the term 'dangerous condition' exclusively to the physical condition of the public property." *Id.* The court also stated the statutory language "dangerous condition" referred to "some physical defect of the property...." *Id.* at 12.

In *Kanagawa,* the plaintiff was kidnapped, assaulted, and raped by an escaped prison inmate. She alleged the prison property was maintained in a dangerous condition because its surrounding fences were inadequate to prevent escape and the gate was left unsecured. In affirming the dismissal of the plaintiff's claim, the supreme court held, "The allegations in the petition fall short of averring a defect, through either faulty construction or maintenance, in the condition of the prison's property." 685 S.W.2d at 835. The court cited the *Twente* opinion with approval and stated:

It is readily apparent that the legislature, by including the various elements set forth above conditioning the waiver of immunity, sought to narrowly delimit the scope of § 537.600(2). It would violate both this manifest legislative purpose and our policy of strictly construing [a] provision waiving sovereign immunity to hold that "a dangerous condition" refers to a condition other than a defect in the physical condition of public property.

685 S.W.2d at 835.

The court of appeals and the supreme court have subsequently held that plain-

plaintiff establishes that the property was in [a] dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

tiffs, attempting to plead the "dangerous condition" waiver of sovereign immunity, were not required under all circumstances to allege facts which, if true, would show a physical defect in the public entity's property. In *Jones v. St. Louis Housing Authority*, 726 S.W.2d 766 (Mo.App.1987), a mother brought a wrongful death claim against the housing authority after her son was struck by debris flung from a lawn mower being used on the premises. The court described the presence of the debris on the grounds as a "physical deficiency" which created a dangerous condition. *Id.* at 774.

The following year the supreme court employed the *Jones* court's "physical deficiency" language in *Alexander v. State*, 756 S.W.2d 539 (Mo. banc 1988). Plaintiff Alexander was an elevator repairman who, while descending a fixed metal ladder in a state office building, stepped onto a folding room partition which had been placed at the foot of the ladder. The partition unfolded causing Alexander to fall and be injured. The court held that the "alleged placement of the partition against the ladder created a physical deficiency in the state's property which constituted a 'dangerous condition.'" *Id.* at 542. Explaining its departure from the strict "physical defects" approach of *Kanagawa* and *Twente*, the court pointed out that the danger to repairman Alexander (and the danger to the decedent in *Jones*) "was created not by any intrinsic defect in the property involved, but by the dangerous condition created by the positioning of various items of property." *Alexander*, 756 S.W.2d at 542. The court further distinguished *Kanagawa* and *Twente*, stating, "the condition [in *Alexander*] was dangerous because its existence, without intervention by third parties, posed a physical threat to plaintiff." 756 S.W.2d at 542.

Despite the somewhat relaxed pleading burden set forth in *Alexander* and *Jones*, the *Alexander* court reiterated the principle that courts "must strictly construe statutory provisions waiving sovereign immunity." 756 S.W.2d at 542. Even under *Alexander*, the plaintiffs in the case before us do not allege facts that plead the existence of a dangerous condition. There is nothing in their petition that would support an inference that the East Avenue conditions they describe constituted physical deficiencies which were dangerous because their very existence, without intervention by third parties, posed a physical threat.

■ A dangerous condition of a public highway or road also can be pled by allegations of negligent, defective, or dangerous design. *See Donahue v. City of St. Louis*, 758 S.W.2d 50 (Mo. banc 1988); *Wilkes v. Missouri Highway and Trans. Comm.*, 762 S.W.2d 27 (Mo. banc 1988); *Cole v. Missouri Highway and Trans. Comm.*, 770 S.W.2d 296 (Mo.App.1989); and *Brown v. Missouri Highway and Trans. Comm.*, 805 S.W.2d 274 (Mo.App.1991).[2] However, the plaintiffs' reliance on these "defective road design" cases is misplaced.

In *Donahue*, the plaintiff alleged a dangerous condition existed where a stop sign was down and not visible to him as he approached an intersection. 758 S.W.2d at 50. The supreme court held that a stop sign was contemplated within the meaning of the phrase "negligent, defective, or dangerous design of roads and highways," *Id.* at 52, and reinstated the plaintiff's claim. In *Wilkes*, the plaintiffs alleged, among other things, that the bridge the injured plaintiff struck "was so situated that an operator of a motor vehicle had no notice of it until almost upon it" and that "the roadway and bridge were negligently construct-

**2.** In 1985 the General Assembly provided public entities with a "state of the art" defense in some cases in which a plaintiff alleged a dangerous condition as a result of the design of a road or highway. The 1985 amendment provides:

In any action under this subdivision wherein a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior to September 12, 1977, the public entity shall be entitled to a defense which shall be a complete bar to recovery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective, or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed.

ed because they posed a danger to motorists by reason of a curve in the road just before the bridge." 762 S.W.2d at 28. Although the issue on appeal in *Wilkes* was whether the 1985 amendments to § 537.600 had retroactive application, the opinion suggests the plaintiffs adequately pled a dangerous condition.

In *Cole,* the plaintiff's petition included allegations that the condition of a state highway was unreasonably dangerous because of its "obscured and sudden curvature" and its "obscured and sudden intersection" with another highway. 770 S.W.2d at 297. The court reversed the dismissal of the claim. In *Brown,* the plaintiff claimed the roadway was in a dangerous condition because of the absence of a road shoulder and guardrails. 805 S.W.2d at 276. The court held that the existence or absence of shoulders and guardrails was encompassed in the language, "negligent, defective, or dangerous design of roads and highways," and reinstated the petition. 805 S.W.2d at 278.

The plaintiffs argue that East Avenue was in as dangerous a condition as the bridge in *Wilkes,* the sudden and obscured curve and intersection in *Cole,* and the shoulder of the road in *Brown.* Argument notwithstanding, we do not find in the petition factual allegations that the portion of East Avenue in question suffered from the "negligent, defective, or dangerous design" as pled in *Wilkes, Cole,* and *Brown.* Borrowing from *Alexander,* we believe the very existence of the road conditions alleged in *Wilkes, Cole,* and *Brown,* if true, posed a physical threat to the plaintiffs in those cases. We do not believe the alleged conditions of East Avenue, standing alone, posed a physical threat to the injured plaintiff in the case before us.

Despite the liberal standard of review stated in *Lowrey* and *Matyska,* we remain constitutionally bound to follow the controlling decisions of the Missouri Supreme Court. *Terrill v. State,* 792 S.W.2d 710, 712 (Mo.App.1990); Mo. Const. art. V, § 2 (1945). Thus we strictly construe statutory provisions that waive sovereign immunity. *Alexander,* 756 S.W.2d at 542. With that limitation in mind, we believe the observation of the *Twente* court is valid:

What appellant seeks is to engraft upon the term "dangerous condition" any and all conditions or events which, if foreseeable, cause or produce injury arising out of or in conjunction with the property or employees of a public entity. If appellant's argument were carried to its logical conclusion, § 537.600(2) [now § 537.600.1(2) ] would become a nullity.

665 S.W.2d at 12.

We affirm the judgment dismissing the plaintiffs' petition.

FLANIGAN, C.J., and MONTGOMERY, J., concur.