STATE of Missouri ex rel. CITY OF
MARSTON, Missouri, Relator,

v.

The Honorable David C. MANN, Judge of
the Circuit Court of Mississippi
County, Respondent.

No. 20372.

Missouri Court of Appeals,
Southern District,
Division One.

April 3, 1996.

Motion for Rehearing or Transfer
Denied April 24, 1996.

Application to Transfer Denied
May 28, 1996.

D. Keith Henson, Paule, Camazine & Blumenthal, P.C., St. Louis, Relator.

Spencer L. Edwards, Dempster, Barkett, McClellan & Edwards, Sikeston, for Respondent.

## ORIGINAL PROCEEDING
## IN PROHIBITION

PER CURIAM.

Judge David C. Mann (Respondent) denied the City of Marston's (Relator) motion to dismiss for failure to state a cause of action upon which relief can be granted. The motion is based on the defenses of sovereign immunity and the public duty doctrine.. The Relator seeks a Writ of Prohibition, alternatively in Mandamus, to restrain Respondent from proceeding with the case against Relator. We issued a Preliminary Order in Prohibition, which we now make absolute as amended.

In the underlying lawsuit, Carl and Peggy Allred (Plaintiffs) allege that Relator is liable in tort to them for injuries suffered by Mr. Allred when his car, and two other cars involved in drag racing, collided at or near the intersection of Highway 61 and Route EE in the city limits.[1] Plaintiffs allege that drag racing constitutes a dangerous condition within the meaning of § 537.600.1(2),[2] because Relator had actual and constructive notice that drag racing was regularly conducted on its roads. Plaintiffs assert that Relator did nothing to prevent the drag racing in that Relator's law enforcement officials failed to provide adequate protection to citizens by not properly supervising Route EE and by failing to investigate complaints of drag racing. Plaintiffs further assert that Relator failed to equip Route EE with "speed bumps" and failed to enact road or traffic regulations to prevent the dangerous condition of drag racing.

Relator raises two points. First, that the trial court erred in overruling Relator's motion to dismiss because Plaintiffs' petition fails to allege facts sufficient to overcome the defense of sovereign immunity; and second, that Plaintiffs' petition fails to state a claim because it alleges actions protected by the public duty doctrine.

■ Respondent raises an objection that prohibition and mandamus are not proper in this case. We disagree. "Where a defendant has the defense of sovereign immunity, 'prohibition is the appropriate remedy to forebear patently unwarranted and expensive litigation, inconvenience and waste of time and talent.' " *State ex rel. Bd. of Trustees v. Russell*, 843 S.W.2d 353, 355 (Mo. banc 1992) (quoting *State ex rel. New Liberty Hosp. Dist. v. Pratt*, 687 S.W.2d 184, 187 (Mo. banc 1985)). "Prohibition is particularly appropriate when the trial court, in a case where the facts are uncontested, wrongly decides a matter of law thereby depriving a party of an absolute defense." *State ex rel. Feldman v. Lasky*, 879 S.W.2d 783, 784–85 (Mo.App. 1994). *See also State ex rel. Mo. Dept. of Agric. v. McHenry*, 687 S.W.2d 178, 181 (Mo. banc 1985)(approving prohibition in a state sovereign immunity claim).

■ Plaintiffs' pleadings are given their broadest intendment; all facts alleged are

---

1. There are no allegations that the two other defendants, the drag racers, are public employees or agents of Relator.

2. All statutory references are to RSMo 1994.

treated as accurate and credible, and all allegations are construed favorably to plaintiff, except that the conclusions of the plaintiff are not admitted. *Stevenson v. City of St. Louis Sch. Dist.,* 820 S.W.2d 609, 611 (Mo. App.1991).

A municipal corporation is a "public entity" within the meaning of § 537.600 and § 537.610. *Wollard v. City of Kansas City,* 831 S.W.2d 200, 201 (Mo. banc 1992). Except as outlined below, "[a] municipality may be held liable for torts arising out of the performance of proprietary functions but no recovery is allowed for injuries which result from the performance of governmental functions." *Lamar v. City of St. Louis,* 746 S.W.2d 160, 161 (Mo.App.1988). "A governmental duty is one which is performed for the common good of all. A duty will be deemed proprietary if it is performed for the special benefit or profit of the municipality as a corporate entity." *Oberkramer v. City of Ellisville,* 650 S.W.2d 286, 295 (Mo.App. 1983).

In *Jones v. State Highway Comm'n,* 557 S.W.2d 225 (Mo. banc 1977), the Missouri Supreme Court abrogated the common law doctrine of sovereign immunity. The legislature reinstated the doctrine in a modified form when it enacted §§ 537.600 to 537.650, RSMo.1978. Section 537.600 "expressly waived immunity for (1) torts arising out of governmental operation of motor vehicles; and (2) dangerous conditions of a public entity's property." *Benton v. City of Rolla,* 872 S.W.2d 882, 884–85 (Mo.App.1994).

More specifically, under § 537.600.1(2) sovereign immunity is waived for injuries caused by the dangerous condition of a public entity's property. *Kanagawa v. State ex rel. Freeman,* 685 S.W.2d 831, 834 (Mo. banc 1985). However, provisions waiving sovereign immunity must be strictly construed. *Id.* at 835.

A plaintiff seeking to state a claim under the aforesaid provision must show: "(1) a dangerous condition of the property; (2) that the plaintiff's injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition." *Id.* at 835.

The dispositive issue in the instant case is whether, as a matter of law, Plaintiffs have pled sufficient allegations to show that drag racing is a "dangerous condition" as that term is used in § 537.600.1(2). *See Johnson v. City of Springfield,* 817 S.W.2d 611, 613 (Mo.App.1991).

In Missouri, three major lines of case authority define the term "dangerous condition" as found in § 537.600.1(2). *See* parallel discussions in *Johnson, supra.* In the first line of case authority, "dangerous condition" has a narrow meaning and refers to defects in the physical condition of a public entity's property. *Kanagawa,* 685 S.W.2d at 835; *Chase v. City of St. Louis,* 781 S.W.2d 571, 572 (Mo.App.1989) (holding that petition failed to allege fire hydrants were physically defective where fire hydrants did not work and plaintiff's decedent was killed in fire); *Zubcic v. Mo. Portland Cement Co.,* 710 S.W.2d 18, 19 (Mo.App.1986) (holding that a sewer trench on sewer district property was not a physical defect and therefore was not a dangerous condition); *Twente v. Ellis Fischel State Cancer Hosp.,* 665 S.W.2d 2, 11–12 (Mo.App.1983) (finding no dangerous condition in absence of security guard from his post in hospital parking lot where plaintiff was raped; no allegation of physical defect of property was made).

In the second line of cases, Missouri courts began relaxing the physical defect standard holding that the physical deficiency in a public entity's property could constitute a dangerous condition if the dangerous condition was created by positioning various objects on the property and not by intrinsic defects in the property. *See Alexander v. State,* 756 S.W.2d 539, 542 (Mo. banc 1988) (holding that the negligent placement of a folding room partition at the foot of a ladder on which plaintiff was working created a physical deficiency which constituted a dangerous condition); *Jones v. St. Louis Housing Auth.,* 726 S.W.2d 766, 774 (Mo.App.1987) (holding that the negligent failure to remove debris on grounds contributed to creating a

dangerous condition which resulted in death when debris was flung by lawn mower). In *Alexander* at 542, the Missouri Supreme Court declared that the test for a dangerous condition was that the condition was "dangerous because its existence, *without intervention by third parties,* posed a physical threat to plaintiff." (Emphasis added.) The concept of dangerous condition "does not include property which is not itself physically defective, but may be the site of injuries as a result of misuse or other intervening act." *Stevenson,* 820 S.W.2d at 612 (finding no physical defect where school had physically sound but open, accessible and unguarded bannisters). Additionally, when the injury is the direct result of the intentional conduct of another person and not the direct result of the physical condition of the property, sovereign immunity is not waived. *Dale ex rel. Dale v. Edmonds,* 819 S.W.2d 388, 390 (Mo. App.1991) (finding no physical defect when student intentionally hit in the eye by another with debris from school yard).

The third line of case authority shows that a dangerous condition may exist due to negligent, defective or dangerous design of public roads and highways, whose very existence poses a threat to a plaintiff. *See Wilkes v. Mo. Highway and Transp. Comm'n,* 762 S.W.2d 27 (Mo. banc 1988) (finding dangerous condition where bridge situated so as to surprise approaching motorists); *Donahue v. City of St. Louis,* 758 S.W.2d 50 (Mo. banc 1988) (involving a downed stop sign not visible as driver approached intersection); *Brown v. Mo. Highway and Transp. Comm'n,* 805 S.W.2d 274 (Mo.App.1991) (finding that the absence of guardrails on roadway constituted a dangerous condition); *Cole v. Mo. Highway and Transp. Comm'n,* 770 S.W.2d 296 (Mo.App.1989) (involving lack of highway signs warning motorists of dangerous curves).

In *Johnson,* 817 S.W.2d at 611, there were allegations relating to the "unreasonably dangerous condition" of a city street because of the high density of vehicles to pedestrians; parked cars blocking motorists' view of children and children's view of vehicles; motorists were not warned of children playing in the area; and a safe speed limit was not posted in the area. This Court held that the plaintiffs had to plead either a "physical defect in the property" as pronounced by the *Kanagawa* court or a "physical deficiency" as held by the *Alexander* court in order to state a claim against the defendant city under the "dangerous condition" exception of § 537.600.1(2). *Johnson* at 614. The Court ruled that "[t]here is nothing in [plaintiffs'] petition that would support an inference that the [street] conditions they describe constituted physical deficiencies which were dangerous because their very existence, without intervention by third parties, posed a physical threat." *Johnson* at 614.

The holding of the court in *Hedayati v. Helton,* 860 S.W.2d 795 (Mo.App.1993) is likewise instructive. In this case the plaintiff father filed suit against the Missouri Highway and Transportation Commission and the Curators of the University of Missouri for the death of his daughter who was struck by an automobile when she was crossing Providence Road in Columbia, Missouri. The plaintiff alleged that Providence Road and a private road controlled by the curators were in a dangerous condition because no traffic control devices, warning signs or stop signs existed on either road and people commonly crossed from one side of Providence Road to the other at the point where the private road entered Providence Road, the place where plaintiff's daughter was struck and killed. The court dismissed the action against the defendants on the grounds that both entities were protected by sovereign immunity. On appeal, the Western District Court of Appeals noted, as in *Johnson,* that the dangerous condition alleged related only to the volume of pedestrian and vehicular traffic and not to the physical defects in the property. *Hedayati* at 796. The court held that the petition must allege facts that show that the condition of the public entity's property was dangerous because of its existence without intervention by third parties. *Id.* at 796–97. The court further held that the absence of traffic control devices and a sign warning persons of the danger of crossing Providence Road did not establish that Providence Road and the private road were in a dangerous condition because their mere existence did

not pose a physical threat to the plaintiff's daughter. *Id.* at 797.

 Utilizing the foregoing principles in the instant case, Plaintiffs' allegations that drag racing was a dangerous condition caused by Relator's negligence (i.e., failure to install traffic control devices such as speed bumps, failure to adopt traffic regulations and failure to enforce the law) do not amount to physical deficiencies in the roadway *which, standing alone,* posed physical threats to the Plaintiffs. Neither do they plead a dangerous condition of a public road through negligent, defective or dangerous design, whose very existence poses a physical threat to Plaintiffs. Moreover, the plaintiffs' alleged injuries in the instant case did not directly result from physical deficiencies in the roadway, but from two individuals drag racing. *See Bates v. State,* 664 S.W.2d 563, 565 (Mo. App.1983).

Lastly, Respondent raises the issue that under § 71.185 Relator has waived sovereign immunity by purchasing liability insurance. However, there are no allegations in Plaintiffs' First Amended Petition that specifically allege Relator has waived sovereign immunity with the purchase of insurance under § 71.185. In order to survive the Motion to Dismiss herein the Plaintiffs must have pled facts in the trial court which would have brought Relator under the purview of § 71.185. *See Newson v. City of Kansas City,* 606 S.W.2d 487, 489–90 (Mo.App.1980). Plaintiffs did not do so and Respondent's contention has no merit.

In turn, Relator argues in its brief that it is immune from suit based on the public duty doctrine. Since the issue of sovereign immunity is dispositive and bars Plaintiffs' claim as to Relator, we need not address this point.

Respondent is directed to take no further action in Plaintiffs' suit against Relator other than to sustain the Relator's Motion to Dismiss as to Relator.