STATE ex rel. DIVISION OF MOTOR CARRIER AND RAILROAD SAFETY, Relator,

v.

The Honorable David W. RUSSELL, Judge, Circuit Court of Clay County, Missouri, Respondent.

No. SC 84342.

Supreme Court of Missouri, En Banc.

Dec. 24, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for appellant.

Bruce B. Brown, James R. Brown, Brown & Brown, Kearney, Michael E. Waldeck, Niewald, Waldeck & Brown, P.C., James D. Conkright, John E. Bordeau, Sanders Conkright & Warren LLP, Kansas City, James J. Virtel, Darren K. Sharp, Armstrong Teasdale LLP, St. Louis, for respondent.

RONNIE L. WHITE, Judge.

## I.

Elizabeth Roe and Joe Wyant (plaintiffs) filed a petition for damages against multiple defendants, including the Division of Motor Carrier and Railroad Safety (relator).[1] Their claim stemmed from an accident that resulted in the death of their son (hereinafter the "victim" and/or "plaintiffs' son"). On June 25, 2002, this Court entered a preliminary writ of prohibition so that it could consider the relator's claim that the plaintiffs' wrongful death action, as to the relator, was barred by sovereign immunity. Because the relator is a division of the sovereign, and has not waived sovereign immunity, the preliminary writ of prohibition is made absolute.

## II.

On September 19, 1998, an accident occurred at the McLeary road railroad crossing in Clay County. That accident resulted in the death of the plaintiffs' son. Their son was electrocuted when the vehicle in which he was traveling passed over the railroad crossing, struck a guardrail, left the road, and then struck, and subsequently broke, an electric transmission pole. The electrical transmission line descended from the pole and came to rest atop the vehicle in which the victim was traveling. The electrical transmission line caused the victim to be electrocuted and ultimately lead to his death.

The plaintiffs contend that the act of crossing the road, which was alleged to have had broken asphalt, potholes, loose gravel, broken and loose railroad ties, uneven and rough surfaces and a steep downhill slope, was in itself a dangerous condition. The plaintiffs also alleged that the relator was created for the purpose of administering regulatory and supervisory powers relating to transportation activities, specifically the supervision and maintenance of railroad crossings. They assert

---

1. Although the actual ownership of the railroad crossing, tracks, and electrical transmission poles is not at issue in this prohibition action, it should be said that they are owned and/or maintained by a combination of several parties. Those parties consist of the defendants, aside from the relator, that were named by the plaintiffs in their wrongful death action, including the City of Excelsior Springs, the Union Electric Company, I & M Rail Link, and the Missouri Department of Transportation (hereinafter "defendants").

that there were insufficient warnings to notify the public of the dangerous conditions at the crossing and that the relator had notice of the defect and an opportunity and duty to ensure that they were corrected by the other defendants before the accident occurred.

In response to the plaintiffs' petition, the relator filed a motion to dismiss. The relator argued that the plaintiffs' wrongful death action was barred by sovereign immunity because it did not own or control the property. The circuit court denied that motion. Relator then filed a petition for writ of prohibition in the court of appeals, which also was denied. The relator then sought a writ of prohibition from this Court, and on June 25, 2002, a preliminary writ was issued.

### III.

■ Sovereign immunity is a judicial doctrine that precludes bringing suit against the government without its consent. It bars holding the government or its political subdivisions liable for the torts of its officers or agents unless such immunity is expressly waived.[2] The State of Missouri has expressly waived the defense of sovereign immunity in two instances, the first of which is inapplicable to the case at bar.[3] The second instance in which Missouri has waived sovereign immunity is for injuries caused by a dangerous condition of a public entity's property.[4] To

recover under the "dangerous condition" waiver, the plaintiff must show that:

> The property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.[5]

Unless the State has waived sovereign immunity under one of the two express provisions, plaintiffs are unable to bring suit against the state or its political subdivisions.

■ "Where a defendant has the defense of sovereign immunity, 'prohibition is the appropriate remedy to forbear patently unwarranted and expensive litigation, inconvenience and waste of time and talent.'"[6] Prohibition "is an extraordinary remedy to correct and prevent the exercise of extrajurisdictional power."[7] It "is not a writ of right and should not be employed for correction of alleged or anticipated judicial errors, and does not lie for grievances which may be adequately redressed

---

2. BLACKS LAW DICTIONARY 1396 (6th ed.1990). Sovereign immunity is codified in Missouri by Section 537.600. RSMo 2000.

3. Section 537.600.1, RSMo 2000 (waiving immunity from injuries directly resulting from the negligent acts or omissions of public employees arising out of the operation of motor vehicles).

4. Section 537.600.2, RSMo 2000.

5. *Id.*

6. *State ex. rel. City of Marston v. Mann,* 921 S.W.2d 100, 102 (Mo.App.1996). (citing *State ex rel. New Liberty Hospital District v. Pratt,* 687 S.W.2d 184, 187 (Mo. banc 1985)).

7. *Knisley v. State,* 448 S.W.2d 890, 892 (Mo. 1970). See also *State ex rel. Douglas Toyota III, Inc. v. Keeter,* 804 S.W.2d 750, 752 (Mo. banc 1991), and *State ex rel. 401 N. Lindbergh Associates v. Ciarleglio,* 807 S.W.2d 100, 103 (Mo.App.1990).

in the ordinary course of judicial proceedings."[8] "Prohibition is particularly appropriate when the trial court, in a case where the facts are uncontested, wrongly decides a matter of law thereby depriving a party of an absolute defense."[9]

It is uncontested that the Missouri Division of Motor Carrier and Railroad Safety is a political entity of the state that, barring waiver, is entitled to protection under the doctrine of sovereign immunity. It is also uncontested that the relator does not own the road, crossing, tracks, or transmission lines at the McLeary road crossing. The controlling issue is the question of whether the railroad crossing at McLeary road can be considered "property" of the relator for the purposes of waiving sovereign immunity despite the fact that it does not own the property.

If the crossing is not "property" of the relator, then it cannot be subject to suit under the dangerous condition waiver. If the crossing is considered the "property" of the relator, the relator is still not liable for failure to perform an intangible act. Failure to perform an intangible act, whether it be failure to supervise or warn cannot constitute a dangerous "condition" of the "property" for purposes of waiving sovereign immunity.[10] A physical defect in the sovereign's property and injuries directly stemming from that defect will subject the sovereign to tort liability.

For a dangerous condition waiver of sovereign immunity to apply, the dangerous condition must "describe, define, explain, denote or reference only and exclusively the physical defects in, upon and/or attending to property of the public entity."[11] In order for property to be considered that of the sovereign for the purpose of waiver immunity under section 537.900.2, the sovereign must have the exclusive control and possession of that property.[12] Privately owned property that is merely regulated by a government agency or entity is not "public property" and, accordingly, is not within the statutory exception to sovereign immunity.[13]

The relator does not own, nor have exclusive control or possession of the McLeary railroad crossing. It acts in a supervisory or regulatory role over the crossing, as it does each of the state's railroad crossings, with the purpose of ensuring that all crossings are safe. Accordingly, the unfortunate accident that occurred at this individual crossing, which is not owned, controlled, or possessed by the relator does not subject it to suit under the dangerous condition waiver of sovereign immunity.

## IV.

The preliminary writ is made absolute.

All concur.

---

8. *Knisley,* 448 S.W.2d at 892.

9. *Marston,* 921 S.W.2d at 102 (citing *State ex rel. Feldman v. Lasky,* 879 S.W.2d 783, 784–85 (Mo.App.1994)).

10. *Twente v. Ellis Fischel State Cancer Hospital,* 665 S.W.2d 2 (Mo.App.1983). (holding that a state hospital was not liable for the "dangerous condition" of not supervising its parking lot, in which the plaintiff was raped).

11. *Id.* at 12.

12. *Tillison v. Boyer,* 939 S.W.2d 471, 473 (Mo.App.1996).

13. *Tyler v. Housing Authority of Kansas City,* 781 S.W.2d 110, 112–13 (Mo.App.1989).