

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **CLINT PUCKETT, ET AL.,** | ) | |
| | ) | |
| **Appellants,** | ) | **WD87656** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **SEPTEMBER 16, 2025** |
| **NODAWAY COUNTY, MO., ET AL.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Nodaway County, Missouri**
The Honorable Corey Keith Herron, Judge

Before Division Three:  Mark D. Pfeiffer, Presiding Judge, Cynthia L. Martin, Judge and
Janet Sutton, Judge

Clint Puckett ("Puckett") and Kevin Bradshaw ("Bradshaw") (collectively "Plaintiffs") appeal from the trial court's judgment dismissing their petition against Nodaway County and Polk Township (collectively "Defendants") for failure to state a claim upon which relief can be granted.  Plaintiffs assert that their petition alleged ultimate facts establishing the waiver of sovereign immunity for a dangerous condition of Defendants' public roadway.  Alternatively, Plaintiffs argue that the trial court abused its discretion in refusing to allow Plaintiffs to amend their petition.  Because the petition sufficiently pleaded facts that, if true, establish that the injuries sustained by Plaintiffs

were caused by the dangerous condition of Defendants' public roadway, we reverse the trial court's judgment and remand for further proceedings.

## Factual and Procedural Background

This appeal arises from the trial court's dismissal of Plaintiffs' petition asserting a claim of negligence against Defendants because the Petition failed to allege sufficient facts to waive sovereign immunity. Assuming all of the assertions set forth in the petition are true, the facts surrounding Plaintiffs' claim of negligence are as follows:[1]

At approximately 10:45 p.m. on August 6, 2019, Puckett was driving a pickup truck in the rural, unincorporated area of Polk Township in Nodaway County, Missouri. Bradshaw was a passenger in the front seat. Puckett was driving westbound on 280th Street. Westbound 280th Street ends at a perpendicular T intersection with Katydid Road, a north-south road. Puckett did not see the T intersection in time to stop and crossed through the intersection, hitting a ditch and embankment on the west side of Katydid Road. Puckett suffered several fractured ribs, sternal fractures, collapsed lungs, and a knee fracture. Bradshaw sustained a hip fracture and dislocation, several fractured ribs, and a tuberosity fracture of his left humerus. Plaintiffs continue to suffer physical pain and are limited in their activities as a result of their injuries.

Plaintiffs filed a petition against Defendants in the Circuit Court of Nodaway County ("Petition"). The Petition alleged that 280th Street, Katydid Road, and the T

---

[1]"In reviewing the trial court's dismissal of a petition for failure to state a claim, we assume that all assertions set forth in the petition are true." *Duvall v. Mo. Bd. of Prob. & Parole*, 708 S.W.3d 878, 881 n.1 (Mo. App. W.D. 2025) (quoting *Barrett v. Cole Cnty.*, 687 S.W.3d 685, 692 (Mo. App. W.D. 2024)).

intersection at issue were under the control and care of Nodaway County and Polk Township.[2]  The Petition alleged that at the time of the accident it was dark, neither Puckett nor Bradshaw were familiar with 280th Street, and neither knew it ended at a T intersection with Katydid Road.  The Petition further alleged that the speed limit on 280th Street at the time of the accident was 50 miles per hour, and that the pickup truck was traveling under the speed limit at the time of the accident.  The Petition alleged that the T intersection did not have artificial lighting nearby, and there was no signage warning or indicating that 280th Street terminated at a T intersection with Katydid Road.  The Petition alleged that the Defendants chose not to place any signage on 280th Street or on the west side of Katydid Road warning motorists of the impending termination of 280th Street, and described several sign options that could have been used.  The Petition further alleged as follows:

> 21. On the date and at the place where the wreck in this case occurred, the roadway was in a dangerous condition due to some or all of the following:
>
>> a. Failure to adequately warn and instruct motorists through signage and other markers of the road coming to an end;
>>
>> b. Failure to adequately post, warn and instruct motorists of the proper speed for driving on this section of 280th Street;

---

[2] Article VI of the Missouri Constitution concerns local government.  Section 9 of Article VI allows the General Assembly to provide for "[a]lternate forms of county government for the counties of any particular class."  The General Assembly has exercised such power in section 65.010, which provides that third- and fourth-class counties may adopt a "township organization" form of county government.  The parties agree that Nodaway County and Polk Township are the governmental entities that control and maintain the roadways located in Polk Township.

All statutory references are to RSMo 2016 as supplemented through August 6, 2019, unless otherwise indicated.

c. In other respects unknown to [P]laintiffs at this time but that may become known prior to trial in this case.

22. Defendants . . . knew or by using ordinary care could have known of this condition in time to remedy and/or warn of the dangerous condition.

23. Defendants . . . failed to use ordinary care to remedy and/or warn of such condition and was [sic] thereby negligent.

24. The dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred.

25. As a direct and proximate result of the dangerous condition caused by the negligence of [D]efendants . . . , [P]laintiffs suffered severe, permanent and progressive injuries including numerous fractures of bones.

26. As a further direct and proximate result of [D]efendants['] . . . negligence, [P]laintiffs experienced severe physical injury, great physical and mental pain, anguish and suffering, and medical expenses, and will incur medical expenses in the future.

The Petition sought money damages, interest on the judgment, costs and expenses incurred, and other relief deemed just and proper.

Defendants filed a motion to dismiss the Petition for failure to state a claim upon which relief can be granted pursuant to Rule 55.27(a)(6)[3] ("Motion to Dismiss"). The Motion to Dismiss argued that the Petition failed to plead with specificity facts demonstrating that Defendants had waived sovereign immunity. The Motion to Dismiss asserted that the Petition's allegations of negligence do not implicate the waiver of sovereign immunity set forth in section 537.600.1(2) for injuries resulting from a "dangerous condition" of public property because such a dangerous condition must be a physical defect. The Motion to Dismiss argued that the Defendants' "alleged failure to

_____

[3]All Rule references are to *Missouri Supreme Court Rules, Volume 1--State, 2024* unless otherwise indicated.

4

warn, notify, and/or instruct motorists that 280th Street ended at its intersection with [Katydid] Road and/or . . . failure to place signage along 280th Street warning that 280th Street ended at its intersection with [Katydid] Road" are not physical defects.[4]  The Motion to Dismiss argued that the Plaintiffs' allegations of negligence were based on the failure to perform an intangible act, which does not, as a matter of law, constitute a dangerous condition pursuant to section 537.600.1(2).

Plaintiffs filed suggestions in opposition to the Motion to Dismiss and argued that the Petition alleged that the T intersection at issue constituted a dangerous condition because "280th Street comes to an end without adequate warning," thereby rendering the roadway dangerous for drivers after dark.  Defendants filed reply suggestions in support of the Motion to Dismiss which repeated the argument that the Petition failed to allege a physical defect, and further argued that the Petition fails to plead a "negligent, defective, or dangerous design" of a roadway.  Defendants noted that although section 537.600.1(2) waives sovereign immunity where the failure to install or maintain road signs and traffic devices compromises roadway safety and traffic flow design, the Petition did not meet this standard because it did not expressly allege that Defendants' failure to install traffic signage rendered the T intersection negligently, defectively, or dangerously designed.

---

[4]The Motion to Dismiss refers to Katydid Road as "Katdid Road."  Both parties' briefs use the spelling "Katydid" to describe the road with which 280th Street ends in a T intersection.

During a hearing on the Motion to Dismiss, the trial court asked Plaintiffs to explain "where in the [P]etition [they] allege the intersection is dangerous in and of itself without a sign." Plaintiffs' counsel responded:

> [M]y petition alleges that this intersection is dangerous because it's not easy to see that the road comes to an end in the dark, and it presents an unreasonable risk that a driver will continue through the intersection, hit the ditch, hit the embankment, and be injured.

Plaintiffs' counsel orally requested leave to file an amended petition to include additional allegations to this effect if the trial court determined that the Petition did not adequately plead facts to demonstrate that the T intersection in and of itself was a dangerous condition.

The trial court issued a judgment on October 15, 2024 ("Judgment") granting the Motion to Dismiss "[f]or the reasons stated in Defendants' motion and supporting suggestions." The trial court denied Plaintiffs' oral motion for leave to amend the Petition.

Plaintiffs appeal.

## Analysis

Plaintiffs' first point on appeal asserts that the trial court erred in dismissing the Petition for failure to state a claim upon which relief can be granted because the Petition alleged facts that were sufficient to establish a waiver of sovereign immunity ("Point One"). Plaintiffs' second point on appeal alternatively argues that if the trial court did not err in dismissing the Petition, the trial court erred in refusing to grant Plaintiffs leave to amend the Petition ("Point Two").

6

We review the trial court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted *de novo*. *McClendon v. Mo. Comm'n on Hum. Rts.*, 713 S.W.3d 686, 692 (Mo. App. W.D. 2025). Such a motion "is solely a test of the adequacy of the petition." *Id.* (quoting *Matthews v. Harley-Davidson*, 685 S.W.3d 360, 366 (Mo. banc 2024)). "In reviewing such a motion, the Court must accept all properly pleaded facts as true, give the pleadings their broadest intendment, and construe all allegations in the pleader's favor." *Duvall v. Mo. Bd. of Prob. & Parole*, 708 S.W.3d 878, 883 (Mo. App. W.D. 2025) (quoting *Graves v. Mo. Dep't of Corr.*, 630 S.W:3d 769, 772 (Mo. banc 2021)). We consider "the petition in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in [the] case." *Id.* at 884 (quoting *City v. Foley v. Dir., Mo. Dep't of Revenue*, 654 S.W.3d 108, 115 (Mo. App. W.D. 2022)).

The Petition asserts a claim of negligence based on the Defendants' failure "to remedy and/or warn of the dangerous condition" at the T intersection of 280th Street and Katydid Road. Nodaway County and Polk Township are political subdivisions of the state. As such, they are immune from suit in tort under the doctrine of sovereign immunity, unless immunity is waived or abrogated. *See Allen v. 32nd Jud. Cir.*, 638 S.W.3d 880, 886 (Mo. banc 2022) (observing that sovereign immunity bars suit against a government or public entity "unless waived or abrogated or the sovereign consents to suit." *Id.* (quoting *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921 (Mo. banc 2016)). "[S]overeign immunity is not an affirmative defense; instead, when suing a [political subdivision], the burden is on the plaintiff to plead facts

7

with specificity that give rise to [the waiver of] sovereign immunity." *Estes as Guardian & Next Friend for Doe v. Bd. of Trustees of Mo. Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678, 709 n.26 (Mo. App. W.D. 2021) (quoting *State ex rel. City of Kansas City v. Harrell*, 575 S.W.3d 489, 492 (Mo. App. W.D. 2019)).

Section 537.600.1 waives sovereign immunity "from liability and suit for compensatory damages for negligent acts or omissions" in two instances:

> (1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

> (2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. . . .

These exceptions are known as the "motor vehicle exception" and the "dangerous condition exception." *Kraus v. Hy-Vee, Inc.*, 147 S.W.3d 907, 914 (Mo. App. W.D. 2004). Plaintiffs' Petition relies on the dangerous condition exception. In order to state a claim against the Defendants for negligence under the dangerous condition exception to sovereign immunity, Plaintiffs' Petition must include facts demonstrating the following:

> 1) a dangerous condition of public property, 2) the injury directly resulted from the dangerous condition, 3) the dangerous condition created a reasonably foreseeable risk of the kind of harm incurred, and 4) a public employee negligently created the condition, or the public entity had actual or constructive notice of the condition.

8

*Porter v. City of St. Louis*, 552 S.W.3d 166, 169 n.1 (Mo. App. E.D. 2018) (quoting *State ex rel. Mo. Hwy. & Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. banc 1998)).

The Petition's sufficiency to establish the first element is challenged by the Defendants' Motion to Dismiss. Thus, we must determine whether the "conditions and circumstances described in the [P]etition were as a matter of law not a dangerous condition of [the Defendants'] property." *Kraus*, 147 S.W.3d at 915 (quoting *Cole v. Mo. Highway & Transp. Comm'n*, 770 S.W.2d 296, 297 (Mo. App. W.D. 1989)).

"In order for property to be 'dangerous' within the narrow exception provided by section 537.600.1(2), it must exhibit a defect that is physical in nature." *Boever v. Special Sch. Dist. of St. Louis Cnty.*, 296 S.W.3d 487, 493 (Mo. App. E.D. 2009) (citing *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell*, 91 S.W.3d 612, 616 (Mo. banc 2002)). As such, "the dangerous condition must describe, define, explain, denote or reference only and exclusively the physical defects in, upon and/or attending to the property of the public entity." *Id.* (quoting *State ex rel. Div. of Motor Carrier*, 91 S.W.3d at 616). Consistent with this requirement, qualifying dangerous conditions have been found by our courts to include "(1) physical defects in public property or its condition, and (2) 'physical deficiencies created by the placement of objects on the public property.'" *Lackey v. Iberia R-V Sch. Dist.*, 487 S.W.3d 57, 59 (Mo. App. S.D. 2016) (quoting *Boever*, 296 S.W.3d at 493) (citing *Alexander v. State*, 756 S.W.2d 539, 541-42 (Mo. banc 1988)). The theory of Plaintiffs' claim of negligence implicates the first category of qualifying dangerous conditions.

9

It is long-settled jurisprudence that a physical defect in public property or its condition includes the "negligent, defective, or dangerous design of a highway or road." *Kraus*, 147 S.W.3d at 915; *see also Hensley v. Jackson Cnty.*, 227 S.W.3d 491, 495 (Mo. banc 2007) (holding that section 537.600.1(2) has contemplated since its enactment "cases involving design defects in roads and other public property, in addition to other kinds of dangerous conditions of public property"). It is also well settled that "[s]igns and traffic controls *can be a part of* negligent, defective, or dangerous maintenance and design of state roads and highways." *United Mo. Bank N.A. v. City of Grandview*, 105 S.W.3d 890, 902 (Mo. App. W.D. 2003) (emphasis added) (quoting *Linton v. Mo. Highway & Transp. Comm'n*, 980 S.W.2d 4, 9 (Mo. App. E.D. 1998)). This is consistent with the fact that the Missouri Supreme Court "has recognized the importance of traffic control devices" in the context of assessing whether roadways have been negligently, defectively, or dangerously maintained or designed. *Kraus*, 147 S.W.3d at 915. In *Donahue v. City of St. Louis*, 758 S.W.2d 50, 52 (Mo. banc 1988), the Supreme Court held:

> We believe the primary purposes in the design of roads and highways are (1) expediting the flow of traffic, and (2) safety. Traffic control and control devices are an integral part of expediting traffic flow and attaining safety, and design, of necessity, is a continuing process which encompasses such things as widening, changing of grades, resurfacing, and installation of lights and traffic controls.

In *Donahue*, the Supreme Court thus held that it was error to dismiss a petition alleging negligence because a downed stop sign that was not visible to motorists entering an

10

intersection resulted in a dangerous condition of public property that waived sovereign immunity. *Id*. at 52-53.[5]

Similar results have been reached in numerous other cases involving negligent, defective, or dangerous design of a public roadway. In *Wilkes v. Missouri Highway & Transportation Commission*, 762 S.W.2d 27 (Mo. banc 1988), a petition alleged that a "bridge was so situated that an operator of a motor vehicle had no notice of it until almost upon it, and thus [the bridge] constituted a dangerous condition." *Id.* at 28. "The petition also said that defendant was negligent in failing to erect signs warning of the danger of the bridge being icy or warning drivers to reduce their speed when approaching the bridge; and that the roadway and bridge were negligently constructed because they posed a danger to motorists by reason of a curve in the road just before the bridge." *Id.* The Supreme Court found section 537.600.1(2) applied retroactively to require reversal of the trial court's dismissal of the petition based on sovereign immunity. *Id.*

---

[5]In *Hensley*, the Supreme Court held that the right result was reached in *Donahue*, though technically by improper reliance on the import of language added to section 537.600.1(2) by amendment in 1985 that grandfathered design defects for public roadways constructed before 1977 if they satisfied a "state of the art" standard. *Hensley*, 227 S.W.3d at 495. Hensley clarified that section 537.600.1(2) has, since its inception, included within its scope the negligent, defective, or dangerous design of pubic roadways as an example of a physical defect in public property. *Id.* at 495-96. *Hensley's* partial abrogation of *Donahue* had no bearing, however, on the continued precedential value of *Donahue's* recognition that traffic controls are an inherent part of traffic design, such that inadequate signage or traffic controls plays a part in determining whether a public roadway is dangerous. In fact, *Hensley* also involved a downed stopped sign, and was found to be "factually indistinguishable from *Donahue*." *Id.* at 496. This led the Supreme Court in *Hensley* to conclude that the plaintiff made a submissible case of waiver of sovereign immunity based on the dangerous condition of a public roadway given evidence that negligent maintenance of a stop sign at an intersection caused his injuries. *Id.*

In *Cole v. Missouri Highway & Transportation Commission*, 770 S.W.2d 296 (Mo. App. W.D. 1989), the plaintiff was a passenger in a vehicle that failed to obey a stop sign located at the intersection of Highway 97 with Highway 32, causing a collision with a vehicle traveling on Highway 32. *Id.* at 297. The plaintiff filed a petition against the Missouri Highway and Transportation Commission in which she alleged that Highway 97 was in a dangerous condition because:

> [The Missouri Highway and Transportation Commission] failed to warn and to properly warn through proper signing and road marking and through other appropriate steps of the obscured and sudden curvature of that roadway and its obscured and sudden intersection with said Missouri Route 32 and on-coming traffic present on said Missouri Route 32 and of the placed stop sign located at the intersection of Missouri Route 97 with Missouri Route 32.

*Id.* The trial court dismissed the plaintiff's petition for failure to state a claim, and the question on appeal was "whether the highway conditions and circumstances described in the petition were as a matter of law not a 'dangerous condition of (the Missouri Highway and Transportation Commission's) property' within the meaning of [section] 537.600.1(2)." *Id.* We reversed the trial court's dismissal of the petition in reliance on the Supreme Court's controlling holdings in *Donahue* and *Wilkes*. *Id.* at 298.

In *Kraus*, we reversed the dismissal of a petition for failure to state a claim when the petition alleged that the dangerous condition of a public roadway arose from confusing traffic striping on the roadway and the failure to post adequate traffic controls and signage. 147 S.W.3d at 918. In *Moore v. Missouri Highway & Transportation Commission*, 169 S.W.3d 595 (Mo. App. S.D. 2005), the Southern District reversed a trial court's dismissal of a petition for failure to state a claim where the petition

12

enumerated several features which caused a curve on a highway to be a dangerous condition, compounded by the absence of any warning signs, holding that the allegations were sufficient to waive sovereign immunity based on a dangerous condition. *Id.* at 599. Similarly, in *Benoit v. Missouri Highway & Transportation Commission*, 33 S.W.3d 663 (Mo. App. S.D. 2000), the Southern District affirmed a jury verdict in favor of a plaintiff who alleged an unwarned curve on a public roadway was a dangerous condition that waived sovereign immunity. *Id.* at 667. And, in *Linton v. Missouri Highway & Transportation Commission*, the Eastern District affirmed a verdict in favor of a plaintiff who alleged a dangerous condition on a public roadway because a left-side highway exit had inadequate signage and was poorly designed. 980 S.W.2d at 6-7.

What all of these cases have in common are allegations that the condition of a roadway (including its design) by its very nature created a hazard warranting adequate signage or warnings to alert motorists to the danger. *See State ex rel. City of Marston v. Mann*, 921 S.W.2d 100, 103 (Mo. App. S.D. 1996) (acknowledging the line of cases where allegations have been deemed sufficient to waive sovereign immunity because they "[s]how[] . . . a dangerous condition may exist due to negligent, defective or dangerous design of public roads and highways, whose very existence poses a threat to a plaintiff"). In this context, as previously noted, "[s]igns and traffic controls *can be a part of* negligent, defective, or dangerous maintenance and design of state roads and highways." *United Mo. Bank*, 105 S.W.3d at 902 (emphasis added) (quoting *Linton*, 980 S.W.2d at 9). That is not to say that the absence of signage or traffic controls, alone, is sufficient to constitute a dangerous condition of a public roadway. Instead, the threat

13

posed by the very existence of a roadway's condition or design is the "dangerous condition" that waives sovereign immunity, resulting in a corresponding duty of care imposed on a governmental entity with control over the roadway to remedy or warn of the foreseeable risk posed by the roadway's dangerous condition. *See Benoit*, 33 S.W.3d at 667-68 (observing that "public entities have a duty to exercise ordinary care in maintaining public roads in a reasonably safe condition for travelers using the roads in the proper manner and with due care," and "'to protect against all possible injuries . . . that are reasonably foreseeable'") (quoting *Williams v. City of Independence*, 931 S.W.2d 894, 896 (Mo. App. W.D. 1996)); *see also* MAI Civil 31.16 [2023 Revision] (addressing the waiver of sovereign immunity for dangerous conditions of public property, and which requires in paragraph second that a jury find public property to be "not reasonably safe" based on posited conditions, and which then requires in paragraph third for the jury to find that the public entity defendant failed to use ordinary care to, among other things, remedy or warn of the conditions).

It is against this settled precedent involving the dangerous condition of a public roadway due exacerbated by inadequate traffic controls or signage that we gauge the sufficiency of Plaintiffs' Petition to waive Defendants' sovereign immunity. The Petition included the following allegations:

> 7. On the evening of August 6, 2019, at approximately 10:45 p.m., [Puckett] was driving his 1995 Dodge Dakota pickup in a westbound direction on 280th Street in an unincorporated area of Polk Township, Nodaway County, Missouri. [Bradshaw] was a front-seat passenger in the vehicle being operated by [Puckett] at the time.

14

8. Westbound 280th Street ends at a "T" where it intersects at a perpendicular angle with Katydid Road.

9. On August 6, 2019, at approximately 10:45 p.m., the [Puckett] vehicle continued on its westbound path across Katydid Road and hit the ditch and embankment west of Katydid Road. The vehicle came to rest in an agricultural filed west of Katydid Road.

. . . .

13. Neither [Puckett nor Bradshaw] was familiar with 280th Street and did not know it ended at the intersection with Katydid Road.

14. The wreck happened at night when it was dark. There was no artificial lighting near the intersection of 280th Street and Katydid Road.

15. The speed limit on 280th Street at the location and time of the wreck was 50 miles per hour. The [Puckett] vehicle was traveling under the speed limit immediately before and at the time of the wreck.

16. Neither [Polk Township nor Nodaway County] did anything to warn or notify motorists that 280th Street ends at Katydid Road.

17. The [D]efendants chose not to place any signage on 280th Street or on the west side of Katydid Road warning motorists of the impending termination of 280th Street. Numerous sign options could have been used, including but not limited to a "Stop Ahead," "T Ahead," or "Be Prepared to Stop" sign east of the intersection, a "Stop" sign at the intersection, or a "Two Direction Large Arrow" sign on the west side of Katydid Road visible to drivers approaching the intersection from the east on 280th Street.

. . . .

21. On the date and at the place where the wreck in this case occurred, the roadway was in a dangerous condition due to some or all of the following:

> a. Failure to adequately warn and instruct motorists through signage and other markers of the road coming to an end;
>
> b. Failure to adequately post, warn and instruct motorists of the proper speed for driving on this section of 280th Street;
>
> c. In other respects unknown to [P]laintiffs at this time but that may become known prior to trial in this case.

15

Read collectively, and given their broadest intendment and assumed to be true as required by our standard of review, the factual allegations in the Petition are indistinguishable from the circumstances described in the litany of dangerous roadway cases summarized above. The factual allegations in the Petition and the reasonable inferences drawn therefrom establish that, at the time of Plaintiffs' accident, 280th Street was designed to end at a T intersection with Katydid Road, and that a motorist traveling at 280th Street's posted speed limit of 50 miles per hour, who was otherwise unaware of the T intersection, and who would not be able to see the impending T intersection because of dark conditions, would not have adequate time to stop at the intersection, and would continue through the intersection to hit a ditch and embankment on the west side of Katydid Road. The Petition sufficiently alleged that the very existence of the T intersection of 280th Street and Katydid Road posed a foreseeable threat to motorists that was a dangerous condition that was not remedied by Defendants given the absence of any signage to provide notice or warning of the impending T intersection. As such, the factual allegations in the Petition sufficiently pleaded that the public property at issue-- the T intersection of 280th Street with Katydid Road--was in a dangerous condition resulting in Plaintiffs' accident.

Defendants insist that Plaintiffs' Petition alleged only that the public roadway was dangerous because of the failure to post signage warning of the impending T intersection, and not because of any particular defect in the physical condition of the roadway itself. It is true that the Petition does not *expressly* allege that the design of the T intersection at 280th Street and Katydid Road was by its very nature a dangerous condition. But, our

16

standard of review following the grant of a motion to dismiss for failure to state a claim requires that we give pleadings their broadest intendment and does not require the use of specific phrases or terminology. *Duvall*, 708 S.W.3d at 883. Though the factual allegations in Plaintiffs' Petition do complain about the lack of signage warning of the T intersection, those allegations follow the allegations addressing the danger posed by a dark, unlit, T intersection in a rural area for motorists who are otherwise unaware of the intersection's presence. This is precisely the argument Plaintiffs made during the hearing on Defendants' Motion to Dismiss when they explained to the trial court that the Petition alleges that the T intersection is dangerous "because it's not easy to see that the road comes to an end in the dark, and it presents an unreasonable risk that a driver will continue through the intersection, hit the ditch, hit the embankment, and be injured."

Despite Defendants' best efforts to do so, this case cannot be characterized, therefore, as one where the sole and only assertion of a "dangerous condition" on public property is the absence of signage or warnings. Plaintiffs' Petition does not implicate, therefore, Missouri cases that stand generally for the proposition that "[a] lack of warnings or similar preventative measures [do] not constitute a dangerous condition of property within the meaning of section 537.600.1(2)." *A.S. v. Willard Pub. Schs.*, 702 S.W.3d 276, 281 (Mo. App. S.D. 2024); *see also State ex rel. Springfield R-XII Sch. Dist. v. Christensen*, 712 S.W.3d 1, 5 (Mo. App. S.D. 2025) (holding that absence of surveillance cameras on a stairwell that was itself not alleged to be defective constitutes a mere failure to supervise that is not a dangerous condition of property resulting in the waiver of sovereign immunity); *Z.S. By & Through P.S. v. Rockwood Sch. Dist.*, 674

17

S.W.3d 818, 821 (Mo. App. E.D. 2023) (holding that the "[f]ailure to perform an intangible act, whether it be failure to supervise or warn, cannot constitute a dangerous condition of the property for purposes of waiving sovereign immunity") (quoting *State ex rel. Div. of Motor Carrier*, 91 S.W.3d at 616). These readily distinguishable cases are not complicated to explain. In the absence of factual allegations explaining why the condition of public property by its very existence poses a threat (and is thus a "dangerous condition"), there is no waiver of sovereign immunity, and no duty of care is imposed on a public entity to remedy or warn of risks related (tangentially or otherwise) to the property.

This explanatory rationale applies equally to the limited number of cases involving public roadways where courts have concluded that sovereign immunity is not waived based solely on allegations of a failure to warn. *See, e.g.*, *Hedayati v. Helton*, 860 S.W.2d 795, 796-97 (Mo. App. W.D. 1993) (holding that allegations in a petition were insufficient to state a claim where plaintiff alleged that the volume of pedestrian and vehicle traffic at an intersection rendered the intersection dangerous in the absence of traffic control devices warning of the danger of crossing the road), *abrogated on separate grounds by Hensley*, 227 S.W.3d at 495 n.1; *Johnson By Johnson v. City of Springfield*, 817 S.W.2d 611, 612, 615 (Mo. App. S.D. 1991) (holding that allegations in a petition were insufficient to state a claim where plaintiff alleged that a high volume of vehicle and pedestrian traffic and vehicles parked along the street created a dangerous condition that a person would be struck in the roadway absent a warning to that effect or a warning for motorists to reduce their speed). As we explained in *Kraus*, allegations about traffic

18

volume or pedestrian volume are not intrinsically related to the condition or design of a roadway, and instead refer to conditions caused by *use* of the roadway, and thus by the intervening acts of third parties. *Krause*, 147 S.W.3d at 917-18; *see also Mann*, 921 S.W.2d at 103 (distinguishing the holdings in *Johnson* and *Hedayati* on the basis that neither involved allegations of roadway design that posed a threat by its very existence, and instead both relied on the intervening acts of third parties in the form of traffic or pedestrian volume to claim a dangerous condition about which warnings should have been given).[6] As was aptly observed in *Kraus*, "a condition is dangerous where 'its existence, without intervention by third parties, posed a physical threat.'" 147 S.W.3d at 914 (quoting *Alexander*, 756 S.W.2d at 542). The alleged dangerous conditions in *Hedayati* and *Johnson* were not a function of the existence or design of the roadway, and were instead a direct function of the intervention of third parties. *Id.* at 916-17. Thus, just as in *Willard*, *Christensen*, and *Z.S. By & Through P.S.*, the plaintiffs in *Johnson* and *Hedayati* failed to identity any condition about public property that by its very existence posed a reasonably foreseeable threat sufficient to constitute a dangerous condition that waives sovereign immunity and simultaneously impose a duty of ordinary care on the public entity to remedy or warn of the danger.

Plaintiffs' Petition does not rely on the intervening acts of third parties to allege that the T intersection at 280th Street and Katydid Road was a dangerous condition. And,

---

[6]As we held in *Kraus*, we need not address in this case whether motor vehicle or pedestrian volume will *never* support a claim that a public roadway was negligently, defectively or dangerously designed as to pose, by its very existence, a threat of injury in the absence of adequate signage or traffic controls. 147 S.W.3d at 917.

19

the Petition does not allege that the absence of adequate traffic controls or signage alone rendered the T intersection a dangerous condition. Instead, fairly read, the Petition alleges that a T intersection in a rural area was a dangerous condition because a motorist unaware of the intersection, driving at a 50-mile-per-hour speed limit in dark conditions, could be foreseeably expected to drive through the intersection and into the ditch on the opposite side of the intersection. And, fairly read, the Petition alleges that the lack of adequate traffic controls or signage exacerbated the dangerous nature of the T intersection, as the presence of adequate signage could have neutralized the dangerous condition of the T intersection as to render it reasonably safe.[7] *See* MAI Civil 31.16 [2023 Revision] (addressing the waiver of sovereign immunity based on the dangerous condition of public property).

The trial court erred in dismissing the Petition for failure to state a claim upon which relief can be granted.

Point One is granted. Because we conclude that the trial court erred in dismissing the Petition for failure to state a claim, Point Two, which alternatively alleges that the trial court committed error by refusing to grant Plaintiffs leave to amend the Petition, need not be addressed and is denied as moot.

---

[7]While we conclude that the Petition states a claim against Defendants by alleging facts sufficient to waive sovereign immunity pursuant to section 537.600.1(2), Plaintiffs retain the burden of proving at trial that the T intersection at 280th Street and Katydid Road was "not reasonably safe" because of conditions that rendered the roadway dangerous, and that Defendants breached the duty of ordinary care by failing to remedy or warn of the conditions. *See* MAI Civil 31.16 [2023 Revision] (addressing the waiver of sovereign immunity based on the dangerous condition of public property).

**Conclusion**

The Judgment is reversed and this matter is remanded for further proceedings.


_____
Cynthia L. Martin, Judge

All concur