Gary D. Witt, Judge
J.M., through his next friend, appeals from the trial court's entry of summary judgment in favor of Lee's Summit School District R-VII ("District") and Douglas DeMarco ("DeMarco"). J.M. argues that the trial court erred in granting summary judgment in favor of the District because sovereign immunity is inapplicable because the injury was caused by a dangerous condition of property under section 537.600.1(2)[1] . Further, J.M. argues that the trial court erred in granting summary judgment in favor of DeMarco because he was not entitled to protection under the official immunity doctrine as his actions were ministerial rather than discretionary. We affirm in part and reverse and remand in part.
Facts and Procedural History[2]
J.M. attended Boy's Club for the academic year of 2014-2015. Boy's Club is an afterschool program for 5th and 6th grade boys at Prairie View Elementary, a school within the District. Boy's Club is sponsored and led by Prairie View Elementary gym teacher, Felton Bishop ("Bishop"). Bishop is assisted by DeMarco, a volunteer for the District. DeMarco was under the supervision of Bishop.
On the last day of Boy's Club for the academic year, the boys were going to play softball. Prior to playing, Bishop and DeMarco gathered the boys into the gym, and Bishop explained how to play the game and the safety rules the boys were to follow. This included a mandate that any person playing the catcher position was required to wear the facemask and chest protector provided by the District. The boys were also instructed to drop the bat after a hit instead of throwing it, as the flying bats were a danger to others.
After the instruction, the boys were split into two groups, half with Bishop and half *368 with DeMarco on an adjacent field. J.M. was playing on the field supervised by DeMarco. When it was J.M.'s turn to play catcher, he first tried on one facemask, which was too small for his face. J.M. then tried on another facemask, which was too big for his face. J.M. attempted unsuccessfully to tighten the larger facemask so that he could use it. J.M. took the facemask to DeMarco to have it tightened. DeMarco was also unable to adjust the facemask to make it fit J.M. DeMarco instructed J.M. to play catcher without the facemask but stand further back, closer to the fence behind the plate.
During the first play after J.M. began playing catcher, the batter hit the ball and threw the bat behind him which struck J.M. in the face. The force of the bat broke J.M.'s nose in two places, requiring surgical intervention.
J.M. brought negligence claims against the District and DeMarco. The District and DeMarco filed a joint answer. The District and DeMarco then filed separate motions for summary judgment. The District argued that J.M.'s negligence claim against it was barred by the doctrine of sovereign immunity. DeMarco argued J.M.'s negligence claim against him was barred by the doctrines of official immunity and the public duty doctrine. The trial court granted summary judgment for both Defendants. This appeal followed.
Standard of Review
The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment de novo. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993) ; Rule 74.04[3] . In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Id. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. Id. The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." Id. Only genuine disputes as to material facts preclude summary judgment. Id. at 378. A material fact in the context of summary judgment is one from which the right to judgment flows. Id.
A defending party ... may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense." Id. at 381. Each of these three methods individually "establishes the right to judgment as a matter of law." Id.
Goerlitz v. City of Maryville , 333 S.W.3d 450, 452-53 (Mo. banc 2011). "If, as a matter of law, the [trial] court's judgment is sustainable on any theory, it should be affirmed on appeal." Id. at 453.
Where summary judgment has been granted based on the affirmative defense *369 of official immunity, the appellate court must consider whether there is a genuine dispute as to the existence of facts necessary to support the affirmative defense. Woods v. Ware , 471 S.W.3d 385, 389 (Mo. App. W.D. 2015) ; Nguyen v. Grain Valley R-5 Sch. Dist. , 353 S.W.3d 725, 729 (Mo. App. W.D. 2011).
Elias v. Davis, 535 S.W.3d 737, 741 (Mo. App. W.D. 2017).
Analysis
J.M. asserts two points on appeal. J.M.'s first point on appeal argues that the trial court erred in entering summary judgment in favor of the District because the District's sovereign immunity was waived based upon the dangerous condition of property exception. J.M.'s second point on appeal argues that the trial court erred in entering summary judgment in favor of DeMarco because DeMarco was not entitled to official immunity because, under these facts, allowing J.M. to play without wearing the protective mask was a ministerial duty rather than a discretionary decision.
Point One
In Point One, J.M. argues that the trial court erred in entering summary judgment in favor of the District because the District's sovereign immunity was waived under section 537.600.1(2), also known as the dangerous condition of property exception. J.M. argues that the area behind the batter on the softball field constituted a dangerous condition of property because bats and balls can strike people in that area of the field. J.M. further argues that whether the dangerous condition of property was a proximate cause of J.M.'s injury is a factual question to be determined by a jury making summary judgment inappropriate.
"A public entity is generally protected by sovereign immunity against lawsuits without the public entity's consent." Rodgers v. City of North Kansas City , 340 S.W.3d 154, 157-58 (Mo. App. W.D. 2011) (citing Spielvogel v. City of Kansas City , 302 S.W.3d 108, 112 (Mo. App. W.D. 2009)). "However, section 537.600.1(2) waives sovereign immunity of a public entity where an injury results from a dangerous condition of the public entities property." Id. at 158. In order to hold a public entity liable under this exception, a plaintiff must prove that:
(1) a dangerous condition existed on a public property; (2) the injury directly resulted from the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of the kind of harm incurred; and (4) a public employee negligently created the condition or the public entity had actual or constructive notice of the condition.
Id.
The dangerous condition alleged "must 'describe, define, explain, denote or reference only and exclusively the physical defects in, upon and/or attending to the property of the public entity.' " State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell , 91 S.W.3d 612, 616 (Mo. banc 2002) (quoting Twente v. Ellis Fischel State Cancer Hosp. , 665 S.W.2d 2, 12 (Mo. App. W.D. 1983) ). Dangerous condition includes "both defects in the physical condition of public property and physical deficiencies created by the placement of objects on the public property." Boever v. Special Sch. Dist. of St. Louis Cnty. , 296 S.W.3d 487, 493 (Mo. App. E.D. 2009). The placement of an individual in relation to non-defective property does not constitute a dangerous condition of the property. Rodgers , 340 S.W.3d at 159 ; see also Goben v. Sch. Dist. of St. Joseph , 848 S.W.2d 20, 22-23 (Mo. App. W.D. 1992) (holding *370 that a child instructed to jump a hurdle on a cement floor did not constitute a dangerous condition of property); Necker v. City of Bridgeton , 938 S.W.2d 651, 655 (Mo. App. E.D. 1997) (holding that a child playing on a non-defective balance beam unattended did not constitute a dangerous condition of property); Stevenson v. City of St. Louis Sch. Dist. , 820 S.W.2d 609, 612-13 (Mo. App. E.D. 1991) (holding that a child sliding down a non-defective stairwell did not constitute a dangerous condition of property); Lackey v. Iberia R-V Sch. Dist. , 487 S.W.3d 57, 60 (Mo. App. S.D. 2016) (holding that organizing a game of 'long base' where the 'base' was in close proximity of the wall does not constitute a dangerous condition of property). "Intangible acts such as inadequate supervision, the lack of warnings and/or signs, the inability to secure an area and the lack of barricades do no create a dangerous condition." Necker , 938 S.W.2d at 655.
In this case, there is no allegation that the softball field was defective or intrinsically dangerous. The softball field was not altered or modified in such a way as to become dangerous. The District using the softball field for its intended purpose did not create a dangerous condition of the property. "What appellant seeks is to engraft upon the term 'dangerous condition' any and all conditions or events which, if foreseeable cause or produce injury arising out of or in conjunction with the property or employees of a public entity. If appellant's argument were carried to its logical conclusion, [section] 537.600(2) [now section 537.600.1(2) ] would become a nullity." Johnson v. City of Springfield , 817 S.W.2d 611, 615 (Mo. App. S.D. 1991) (quoting Twente , 665 S.W.2d at 12 ). "[W]e strictly construe statutory provisions that waive sovereign immunity." Id. at 614. To adopt J.M.'s argument the exception would engulf the rule.
Alternatively, J.M. argues that had the District provided a functional facemask that properly fit his face this would have "remedied the dangerous condition." He argues that this case parallels Warren v. State , 939 S.W.2d 950 (Mo. App. W.D. 1997) because the District was supposed to provide him a facemask to prevent injury to his face.
In Warren v. State , the Missouri State Penitentiary had removed a protective guard on a table saw which was designed to prevent kick back. 939 S.W.2d at 952. Warren, an inmate at the penitentiary, used the table saw to cut a piece of lumber. Id. Due to the removal of the safety feature the saw kicked back, throwing a piece of wood and striking Warren's wrist causing injury. Id. This Court found that by removing the protective guard, the saw was in a dangerous condition and immunity was waived. Id. at 955.
However, unlike the saw in Warren , which had the safety guard removed making it dangerous, in this case there is no allegation that the facemask was altered or changed in any way to make it dangerous or defective. The allegation is that the facemask was not the correct size to properly fit J.M. and that this made the area of the softball field where he was playing dangerous. The fact that a properly fitting mask was not provided does not, in and of itself make the area of the softball field dangerous. Finding no dangerous condition of the District's property, Point One is denied.
Point Two
J.M. argues in Point Two that the trial court erred in granting summary judgment in favor of DeMarco because he was not entitled to official immunity as the decision to have J.M. play without the protective facemask under these facts was *371 a ministerial act and not a discretionary decision.
J.M. first argues that DeMarco failed to plead and prove that he is entitled to immunity under the official immunity doctrine. J.M. argues that DeMarco did not allege or prove the scope of his duties, that his actions involved policy-making or the exercise of professional judgment, and the consequences of not applying official immunity.
Rule 55.08 requires:
In pleading to a preceding pleading, a party shall set forth all applicable affirmative defenses and avoidances.... A pleading that set forth an affirmative defense or avoidance shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance.
"When determining the sufficiency of the allegations setting forth a defendant's affirmative defense, we may look to the responsive pleadings as a whole." Roth v. Roth , 176 S.W.3d 735, 738 (Mo. App. E.D. 2005). In order to receive protection under the official immunity doctrine, one must show that he or she is a public employee who committed a negligent act during the course of their official duties and the performance of the act was discretionary. Southers v. City of Farmington , 263 S.W.3d 603, 610-11 (Mo. banc 2008). Here, DeMarco properly asserted the affirmative defense of official immunity. DeMarco admitted J.M.'s allegation in the amended petition that he was a volunteer for the District. DeMarco asserted he was acting in the scope and course of his duties for the District. DeMarco also asserted that in carrying out any duties he owed, he exercised his professional expertise and judgment. DeMarco's allegations in the responsive pleading as a whole constitute a short and plain statement of the facts properly pleading the defense of official immunity.
J.M. then argues that, even if DeMarco properly pled his affirmative defense of official immunity, DeMarco is not entitled to the protection afforded by the doctrine because he was not afforded the discretion to instruct J.M. to play catcher without a facemask. J.M. argues that DeMarco was present when Bishop, his supervisor, informed everyone involved that any person playing catcher was required to wear a facemask and other protective gear provided by the District. Therefore, DeMarco had no discretion to allow the players to play catcher without the proper protective gear, including the facemask and DeMarco's decisions regarding the wearing of face protection were ministerial. Further, J.M. argues DeMarco was not afforded the discretion to instruct J.M. to play catcher without a facemask because doing so violated school board policy. J.M. argues that the school board policy, coupled with the direct instructions from Bishop, created a ministerial duty to require children to wear the provided safety gear and DeMarco violated that duty.
The judicially-created doctrine of official immunity "is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." Southers , 263 S.W.3d at 611. "Its goal is also to permit public employees to make judgments affecting public safety and welfare without concern about possible personal liability." Id. Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts. Woods v. Ware , 471 S.W.3d 385, 391 (Mo. App. W.D. 2015). It does not provide public employees immunity *372 for torts committed when acting in a ministerial capacity. Id. at 392.
"Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." Southers , 263 S.W.3d at 610. A discretionary act requires the exercise of reason in adapting the means to an end and of discretion in determining how or whether an act should be done or course pursued. Id. A ministerial function is one that a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience of the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. Id. A public employee is only liable for a ministerial act if the conduct violates either a duty imposed by statute or regulation or a departmentally mandated duty. A.F. v. Hazelwood Sch. Dist. , 491 S.W.3d 628, 631 (Mo. App. E.D. 2016). A departmentally-mandated duty may arise from sources other than statutes or regulations such as department rules, the orders of a superior, or the nature of the employee's position. Id. at 631-32. Whether an act is discretionary or ministerial is a determination made on a case by case basis considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity. Southers , 263 S.W.3d at 610.
DeMarco's duty was to conduct and supervise the students playing a game of softball, which required him to exercise some discretion. See Elias v. Davis , 535 S.W.3d 737, 744 (Mo.App. W.D. 2017) ("A coach's duty to conduct and supervise a football practice requires the exercise of discretion rather than the performance of routine tasks."); Woods , 471 S.W.3d at 393 (determining how to conduct a wrestling practice is left to the discretion of the coach). However, DeMarco was provided specific direction from Bishop that all players were to wear facemasks and the other protective gear provided by the District when playing the catcher position.
The school board policies provide:
Board Policy GBCB-Staff Conduct states that persons will:
1. Become familiar with, enforce and follow all Board policies, regulations, administrative procedures, other directions given by district administrators and state and federal laws as they affect the performance of job duties.
10. Properly supervise all students. The Board expects all students to be under assigned adult supervision at all times during school and during any school activity. Except in an emergency, no employee will leave an assigned group unsupervised.
11. Obey all safety rules, including rules protecting the safety and welfare of students.
The school board policy further states:
Board Policy EBBA-Illness and Injury Response and Prevention
The district will provide protective equipment when it is required by law or when it is determined by the superintendent or designee to be necessary to maintain district safety standard ... When protective equipment is provided , all persons are required to use the equipment as directed . (emphasis added).
The school board policy further provides when defining 'volunteer' that "[v]olunteers are under the direct control of district staff."
While none of these policies specifically define what it is required to supervise a softball game, when read together the policies coupled with the direct instruction from Bishop, DeMarco was without discretion *373 regarding the use of the protective mask for any student playing catcher during the game. The protective mask and chest protector were protective equipment provided by the District, so under the board policy they were required to be used as directed. DeMarco was under Bishop's supervision and control and Bishop directed that the facemasks be worn by anyone playing the catcher position. Since DeMarco received direction from district staff requiring use of the protective equipment and it was Board Policy to use the protective equipment as directed, any discretion DeMarco may have had regarding the use of the facemask was removed.
By not requiring J.M. to wear a facemask, DeMarco failed to perform a required ministerial act. As previously stated, a departmentally-mandated duty may arise from sources other than statutes or regulations such as department rules, the orders of a superior, or the nature of the employee's position. A.F. v. Hazelwood Sch. Dist. , at 631-32. Under the facts of this case, DeMarco is not entitled to the protections of the official immunity doctrine.
Point Two is granted.
Conclusion
We affirm the trial court's judgment granting summary judgment in favor of Lee's Summit School District. We reverse the trial court's judgment granting summary judgment in favor of DeMarco and remand for further proceedings consistent with this opinion.[4]
All concur

All statutory citations are to RSMo 2000 (supplemented through January 1, 2017), unless otherwise noted.

In reviewing the grant of summary judgment we review the record in the light most favorable to the party against whom judgment is entered. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993).

All rule references are to Missouri Supreme Court Rules (2017).

The District filed a motion, which was taken with the case, to dismiss J.M.'s appeal. The motion is denied.