

# Missouri Court of Appeals

## Southern District

### In Division

CHRISTINA FORESTER, )
)
    Appellant, )
) No. SD37325
vs. )
)
CHRYSTAL MAY, ) **Filed: November 22, 2022**
)
    Respondent. )

APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable John D. Beger, Judge

**REVERSED AND REMANDED**

This case involves the tragic death of a 22-month-old child, M.S. ("Child"), from a fentanyl overdose that occurred after the Children's Division of the Missouri Department of Social Services ("Children's Division") began investigating reports that Child was being abused or neglected by her parents. Child's maternal grandmother, appellant Christina Forester ("Forester"), filed a wrongful death lawsuit against respondent Chrystal May ("May"), the caseworker for Children's Division, who investigated the reports of parental abuse or neglect.[1] The trial court dismissed Forester's petition against May with prejudice on the grounds of (1)

---

[1] Forester brought the lawsuit as plaintiff *ad litem* because Child's parents were not entitled to bring the lawsuit due to their intentional or knowing criminal acts that caused or contributed to Child's death. *See* § 537.080. All statutory citations are to RSMo. (2016).

official immunity and (2) lack of causation.  Forester, in four points, claims this dismissal was in error.  We agree.

## Background and Procedural History

Forester's petition alleged the following facts.[2]  On December 5, 2019, Children's Division received a hotline call from the Rolla Police Department that Child's parents were abusing or endangering Child.  May began an investigation that day.[3]  May arrived at Child's home and observed the presence of law enforcement officers.  The officers informed May they had a search warrant for the home and believed Child's father was involved in a recent drug overdose.  May was informed by law enforcement that narcotics were found inside Child's shoes and in a candy bowl inside parents' home.

May wrote in her report that Child had significant injuries to her person.  Child and parents were given drug tests.  Children's Division held a meeting and determined Child would stay with Child's paternal grandmother while the drug tests were pending and Child's parents would not have unsupervised visits with Child.  On December 11, May received Child's drug test results, which showed Child tested positive for opiates, morphine, and heroin.

On December 21, the Rolla Police Department received a call reporting an infant at Child's parents' home was non-responsive and not breathing.  Upon arrival, officers discovered Child unconscious and not breathing.  They attempted to resuscitate her, but were unable to do so.  The Medical Examiner's Office conducted an autopsy of Child, which determined her cause of death was a fentanyl overdose.

---

[2] This petition was Forester's "THIRD AMENDED PETITION FOR WRONGFUL DEATH UNDER SECTION 537.080[.]"  For brevity's sake, we refer to it as "the petition."  Children's Division was dismissed earlier from the lawsuit on the basis of sovereign immunity.

[3] Under Section 210.145.3, Children's Division "shall determine if the report merits investigation, including reports which if true would constitute a suspected violation of" certain criminal statutes, such as section 568.045 (1st degree endangering the welfare of a child), 568.050 (2nd degree endangering the welfare of a child), and 568.060 (abuse or neglect of a child).

Five months after Child's death, Forester sent a request to the Department of Social Services requesting the release of records related to SAFE CARE provider referrals for Child.[4] A few days later, on May 18, 2020, May submitted a SAFE CARE referral form (a "CD-231").

Forester's petition alleged that under Children's Division's policies, May had a duty to complete a CD-231 and transmit it to DSS.CD.SafeCareReferral@dss.mo.gov no later than December 8, and that the failure to do so caused Child's death. According to Forester, had May filed the CD-231 within 72 hours of opening the investigation as required, Child would have been removed from "her place of danger and would be alive today."

According to Forester:

> 22. The caseworker assigned by the Children's Division to a child abuse and negligect [sic] case is required under Children's Division policies to make the mandatory SAFE CARE referral within 72 hours of the Children's Division opening an investigation into the abuse or neglect of a child under the age of four.
>
> 23. Children's Division policies also mandate the manner and form in which the assigned case worker makes the required SAFE CARE referral.
>
> 24. Specifically, the caseworker responsible for making the required SAFE CARE referral must complete the "SAFE-CARE Provider Evaluation Referral form (CD-231)" and send the completed CD-231 form by encrypted email to DSS.CD.SafeCareReferral@dss.mo.gov.
>
> 25. The CD-231 form is a one-page document that the caseworker completes by: 1) filling in the child's name, date of birth, and gender, the alleged perpetrator's name and relationship to the child, and the name and contact information of the caseworker and the caseworker's supervisor; 2) identifying the category of abuse or neglect at issue by checking the appropriate box, stating the reported concern, and providing "additional information obtained from contacts," if any; and 3) providing "medical information" by stating if and by whom the child has received medical attention, stating if the child has an injury, stating if the caseworker has medical records for the reported incident, and describing the specific injuries. *Exhibit 1, CD-231 Form.*

---

[4] Section 210.146.1 requires an evaluation by a SAFE CARE provider "or a review of the child's case file and photographs of the child's injuries by a SAFE CARE provider" upon the receipt of a report of child abuse or neglect concerning a child three years of age or younger and the Children's Division determines that such a report merits an investigation. A SAFE CARE provider is a "physician, advanced practice nurse, or physician's assistant licensed in this state who provides medical diagnosis and treatment to children suspected of being victims of abuse" and who receives certain training or peer review. § 334.950(2). Children's Division requires that all SAFE CARE referrals be completed and submitted "as soon as possible, but no later than seventy-two (72) hours" after receiving the child abuse and neglect report. Department of Social Services Child Welfare Manual, Section 2, Chapter 5.3.5.

May filed a motion to dismiss Forester's petition on the sole ground that May was immune from the lawsuit under the doctrine of official immunity.[5] The trial court granted the motion to dismiss on two grounds: (1) May was entitled to official immunity because her actions were discretionary; and (2) the late filing of the CD-231, while "egregious," was not a cause of Child's death.

Forester appeals from the trial court's final judgment dismissing her petition with prejudice. Forester raises four points on appeal. In point 1, Forester argues the trial court erred in dismissing her petition based on official immunity because the duty to complete and submit the CD-231 was a ministerial act requiring no discretion. Points 2 through 4 challenge the trial court's determination that the failure to file the CD-231 was not a cause of Child's death. Because our resolution of point 2 is dispositive of points 3 and 4, we do not address those points. Finding merit in points 1 and 2, we reverse and remand for further proceedings consistent with this opinion.

### Standard of Review

Our standard of review for a trial court's grant of a motion to dismiss is *de novo*. ***Goldsby v. Lombardi***, 559 S.W.3d 878, 881 (Mo. banc 2018). "*De novo* review compels this [C]ourt to consider the merits of the motion to dismiss under the same standard applied by the trial court when considering the issue." ***Mosley v. English***, 501 S.W.3d 497, 503 (Mo. App. E.D. 2016). In determining if the trial court's decision to dismiss the petition is proper, we review the grounds raised in the defendant's motion to dismiss. ***Lang v. Goldsworthy***, 470 S.W.3d 748, 750 (Mo. banc 2015). Here, the only ground raised in the motion to dismiss was the affirmative defense of official immunity.[6] The defendant, in this case, May, bears the burden

---

[5] May's motion to dismiss stated, in relevant part: "The third amended petition should be dismissed because, again, May is immune from the allegations in this lawsuit in both her official capacity and in her individual capacity. As a result, the third amended petition fails to state a claim against May."

[6] Official immunity is an affirmative defense. ***Richardson v. City of St. Louis***, 293 S.W.3d 133, 139 (Mo. App. E.D. 2009).

4

of proving the affirmative defense of official immunity applies. ***Kemp v. McReynolds***, 621 S.W.3d 644, 652 (Mo. App. E.D. 2021).

In determining if Forester's petition was properly dismissed based on May's affirmative defense of official immunity, we accept all properly pleaded facts in Forester's petition as true, giving the pleadings their broadest intendment, and construe all allegations favorably to Forester. ***Lee v. Missouri Dep't of Transp.***, 618 S.W.3d 258, 261 (Mo. App. W.D. 2021). Where an affirmative defense is asserted in a motion to dismiss, a trial court may dismiss the petition only if the petition clearly establishes "*on its face and without exception*" that the defense applies and the claim is barred. ***Doe as next friend of Doe Minor v. Garagnani***, 614 S.W.3d 556, 561 n.5 (Mo. App. S.D. 2020). Thus, Forester is entitled to a reversal of the trial court's dismissal only if May's defense of official immunity is not clearly established by the petition. *See **id.***

### Point 1: May's Affirmative Defense of Official Immunity Is Not Clearly Established by Forester's Petition

"Official immunity protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." ***State ex rel. Helms v. Rathert***, 624 S.W.3d 159, 163 (Mo. banc 2021) (internal quotations and citation omitted). While this doctrine shields public employees for alleged acts of negligence while performing discretionary acts, it does not apply to ministerial acts. ***Laughlin v. Perry***, 604 S.W.3d 621, 627 (Mo. banc 2020). Thus, whether the doctrine of official immunity applies often turns on whether the alleged act of negligence was a discretionary or a ministerial act.

"A discretionary act requires the exercise of reason in adapting the means to an end and of discretion in determining how or whether an act should be done or course pursued." ***J.M. v. Lee's Summit Sch. Dist.***, 545 S.W.3d 363, 372 (Mo. App. W.D. 2018). In contrast, a ministerial act is one of a clerical nature which a public officer is required to perform upon the

5

happening of certain facts, in a prescribed manner, in obedience to a mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. ***Richardson***, 293 S.W.3d at 139. The duty to perform a ministerial act can be "imposed by statute or regulation or a departmentally mandated duty." ***J.M.***, 545 S.W.3d at 372. Typically, a ministerial act is merely clerical and "compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials." ***State ex rel. Alsup v. Kanatzar***, 588 S.W.3d 187, 191 (Mo. banc 2019). If there is any room whatsoever for variation in when and how a particular task can be done, it is not ministerial. ***Helms***, 624 S.W.3d at 163. "The final determination of whether an act is discretionary or ministerial is based on the specific facts of each case, judged by factors including the nature of the official's duties, the extent to which policymaking or professional expertise is involved, and the likely consequences of withholding immunity." ***Richardson***, 293 S.W.3d at 139. "Thus the relevant inquiry is not whether the law authorizes, regulates, or requires an action. Instead, it is whether the action itself is ministerial or clerical." ***Conway v. Caldwell***, 645 S.W.3d 550, 558 (Mo. App. W.D. 2022) (quoting ***Alsup***, 588 S.W.3d at 192).

May argues the official immunity doctrine applies because she had discretion in how to conduct the investigation.[7] May's argument fails because, in determining if official immunity

---

[7] May also brings to our attention ***Conway***, a recent case involving the use of the official immunity doctrine. ***Conway***, however, is distinguishable from the case before us because: the appellants in that case, unlike here, never identified a specific ministerial act employees of the Missouri Department of Social Services (the "MoDSS employees") failed to perform. The trial court in ***Conway*** granted MoDSS employees' motion for judgment on the pleadings based on the doctrine of official immunity. 645 S.W.3d at 556. On appeal, appellants argued various statutes and "protocols" required MoDSS employees to report the child's case "to the proper authorities" once the child's family refused to cooperate, and this requirement rendered the MoDSS employees' next steps ministerial by requiring the employees to send information about the danger "in some manner by using one of the hundreds of forms promulgated by MoDSS, by phone, fax, or email." ***Id.*** at 558. Even appellants' own characterization of the required actions revealed great discretion in how and to whom the reporting was to be done since it allowed MoDSS employees to choose what form to send, whom to send it to, and when to send it. ***Id.*** at 559. The Western District of this Court determined the trial court did not err in granting MoDSS employees' motion for judgment on the pleadings based on official immunity. In our present case, unlike in ***Conway*** where the appellants alleged the failure to follow some unspecified "protocols," Forester has identified a specific act that requires no discretion, which is the completion of the CD-231 within 72 hours of the opening of an investigation, submitted to a specified email address.

applies, the focus is on the specific act or omission from which the alleged liability arises—not the general nature of the job.

*J.M.* demonstrates this point. There, a student brought a lawsuit against a school volunteer ("Volunteer"), alleging negligence after the student was injured during an afterschool softball game supervised by Volunteer. 545 S.W.3d at 367-68. According to the student, Volunteer was instructed by the school district to require any person playing catcher to wear a facemask. *Id.* at 371. Volunteer filed a motion for summary judgment, arguing the negligence claim against him was barred by the doctrine of official immunity because he had discretion in his supervision of the softball game. *Id.* at 368. The trial court granted the summary judgment motion. *Id.* On appeal, the student argued the trial court erred in granting summary judgment in favor of Volunteer based on official immunity because Volunteer had no discretion to allow the student to play without a protective facemask. *Id.* at 369. The Western District of this Court agreed and reversed. *Id.* at 373. While Volunteer's supervision of the softball game gave him some discretion in how to conduct and supervise the softball game, he had no discretion to allow student to play without a facemask since the school officials had given specific directions to require all players to wear facemasks. *Id.* at 372-73. "By not requiring [student] to wear a facemask, [Volunteer] failed to perform a required ministerial act" and was not entitled to the protections of the official immunity doctrine. *Id.* at 373.

Here, the completion and submission of the CD-231 form was purely clerical and required no particular expertise or professional judgment. There was no discretion in what information to provide, when to provide it, or where to provide it. Forester alleged that the CD-231 is a one-page form that May was required to complete upon the opening of an investigation of Child, as soon as possible but no later than 72 hours. The CD-231 required the caseworker to supply basic information, such as Child's name, date of birth, gender, the alleged perpetrator's relationship to Child, checking the appropriate box identifying the category of abuse or neglect, and providing medical information by stating if Child had received medical attention, had an

injury, and whether the caseworker had medical records for the incident. Per Children's Division policy, once completed, the CD-231 was required to be sent to a designated email address. While May did have some discretion in how to conduct the investigation, we cannot say it is clear from the face of Forester's petition that May had any discretion in when, how, where, or whether to submit the CD-231 once the investigation was opened. Forester's petition pleaded sufficient facts alleging May failed to perform a ministerial act. The trial court erred in dismissing the petition based on the doctrine of official immunity. Point 1 is granted.

## Points 2-4: Causation

In point 2, Forester argues the trial court erred in determining the late-filing of the CD-231 form did not cause Child's death because causation was not an appropriate basis for dismissal since it was not asserted as a ground for dismissal in May's motion to dismiss. We agree.

The trial court's dismissal must be reversed if the motion to dismiss cannot be sustained on any ground *alleged in the motion*. **Kemp**, 621 S.W.3d at 652. The only ground alleged in the motion to dismiss was official immunity. The motion to dismiss did not seek dismissal on the ground that Forester failed to plead facts demonstrating causation. Therefore, the trial court erred in dismissing the petition on that ground. Point 2 is reversed. Because our resolution of point 2 is dispositive of points 3 and 4, we need not address them.

## Conclusion

The trial court erred in dismissing Forester's petition with prejudice. The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS

8