

## Missouri Court of Appeals
### Southern District
#### In Division

| | |
|---|---|
| A.S. and K.S., individually and as next friends of minor J.S., | ) |
| | ) |
| Appellants, | ) |
| | ) No. SD38222 |
| vs. | ) |
| | ) **Filed: November 25, 2024** |
| WILLARD PUBLIC SCHOOLS, MATT TEETER, AMANDA HAMBEY, MISSY LUCAS, and DOES #1-20, | ) |
| | ) |
| | ) |
| Respondents. | ) |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Joshua B. Christensen, Judge

**<u>AFFIRMED</u>**

J.S., an elementary student at Willard Public Schools, was playing outside on school grounds during an outdoor activity time when she hit her head on a large, horizontal, metallic barrier arm, briefly rendering her unconscious. J.S.'s parents were notified only that a "minor incident" had occurred. J.S. remained at school for the rest of the school day and also for an after-school program.

J.S. was in excruciating pain and was highly sensitive to light that evening, so her parents took her to the hospital. She was diagnosed with a concussion, fractured skull, brain bleeding,

hematoma, and severe head trauma.  J.S. was admitted to the pediatric intensive care unit for treatment and monitoring.[1]

Appellants sued the school district, superintendent, principal, special services director, and 20 "Doe" plaintiffs on theories of general negligence, negligent supervision, intentional and negligent infliction of emotional distress, premises liability, and intentional and negligent "breach of duty to protect" J.S.  Respondents, asserting immunity from suit, moved to dismiss Appellants' petition for failure to state a claim on which relief can be granted.  After briefing and argument, the circuit court granted Respondents' motion to dismiss, finding sovereign immunity and official immunity barred Appellants' claims as pleaded.  Appellants did not seek to amend their petition, instead filing a notice of appeal.

## Standard of Review

"When a circuit court sustains a motion to dismiss for failure to state a claim, this Court reviews the circuit court's ruling *de novo*."  *Forester v. May*, 671 S.W.3d 383, 386 (Mo. banc 2023).  A circuit court's judgment sustaining a motion to dismiss will be affirmed if the factual allegations in the petition, taken as true, establish defendants are entitled to immunity.  *Id.*  We presume a party has offered the strongest presentation of their case that the facts permit when, as here, the party whose petition was dismissed does not seek leave to amend their pleadings. *Black v. Rite Mortg. & Fin., Inc.*, 239 S.W.3d 165, 168 (Mo.App. 2007).

## Sovereign Immunity

Appellants claim the circuit court erred in granting the motion to dismiss because Willard

---

[1] We relate the facts as pleaded in Appellants' petition, giving the pleadings their broadest intendment and construing all allegations favorably to Appellants.  *Forester v. May*, 671 S.W.3d 383, 386 (Mo. banc 2023).

Public Schools did not prove it is shielded from liability by sovereign immunity.

"Sovereign immunity is a judicial doctrine that precludes bringing suit against the government without its consent. It bars holding the government or its political subdivisions liable for the torts of its officers or agents unless such immunity is expressly waived." *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell*, 91 S.W.3d 612, 615 (Mo. banc 2002). The existence of sovereign immunity is a question of law. *Poke v. Independence Sch. Dist.*, 647 S.W.3d 18, 20 (Mo. banc 2022). "Statutory provisions waiving sovereign immunity are strictly construed." *Allen v. 32nd Judicial Circuit*, 638 S.W.3d 880, 891 (Mo. banc 2022)*, as modified on denial of reh'g* (Mar. 1, 2022). "The plaintiff must establish these elements as part of its own case, because sovereign immunity is not an affirmative defense." *Maune ex rel. Maune v. City of Rolla*, 203 S.W.3d 802, 804 (Mo.App. 2006).

Appellants argue the averments in their petition bring their claims within § 537.600.1(2),[2] which expressly waives sovereign immunity for

> [i]njuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

As a public school, Willard Public Schools is a public entity that enjoys sovereign immunity except as waived. *Lackey v. Iberia R-V Sch. Dist.*, 487 S.W.3d 57, 59 (Mo.App. 2016). The metallic barrier arm is alleged to have been located on Willard Public Schools' property at the time of the

---

[2] Statutory references are to RSMo. (2016).

injury. The dispositive issue for our determination is whether, taking Appellants' pleadings as true and giving them their broadest possible intendment, they have pleaded that the metallic barrier arm was in a dangerous condition at the time of the injury so as to waive sovereign immunity under § 537.600.1(2).

"Dangerous public property within § 537.600.1(2)'s narrow exception 'must exhibit a defect that is physical in nature.'" *Lackey*, 487 S.W.3d at 59 (quoting *Boever v. Special Sch. Dist. of St. Louis Cnty.*, 296 S.W.3d 487, 493 (Mo.App. 2009)). This defect can be in the property itself or due to the positioning of the property. *State ex rel. City of Marston v. Mann*, 921 S.W.2d 100, 102 (Mo.App. 1996). Thus, "[t]he dangerous condition alleged 'must describe, define, explain, denote or reference only and exclusively the physical defects in, upon and/or attending to the property of the public entity.'" *J.M. v. Lee's Summit Sch. Dist.*, 545 S.W.3d 363, 369 (Mo.App. 2018) (quoting *Russell*, 91 S.W.3d at 616) (citation and internal punctuation omitted).

Appellants only generally contend, "the physical composition of the pole is alleged to be at issue in causing injury." That a metallic barrier arm was hard enough to knock out and concuss a small child whose head makes contact with it does not make the property defective. *See Z.S. by & through P.S. v. Rockwood Sch. Dist.*, 674 S.W.3d 818, 821 (Mo.App. 2023) ("The fact that the wall was hard and dense simply means . . . that it was made of stone, not that it was in a dangerous condition*."*).

Next, Appellants argue that even if the barrier arm itself is not defective physically, its positioning makes the barrier arm a dangerous property condition. In all of the cases Appellants cite for this proposition, either the property was found not to be in a dangerous condition or the potential danger presented by hazardous placement of otherwise non-defective property was

4

apparent from the pleadings.

At issue in this case is a barrier arm. A "barrier" is "something material that blocks or is intended to block passage." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/barrier (last visited Nov. 20, 2024). Placement of a barrier arm in a position to block passage is a function, not a defect, of property of this type. Otherwise non-defective property does not become a dangerous condition simply because children are placed in proximity to the property. *J.M.*, 545 S.W.3d at 369. None of Appellants' pleadings, even when construed broadly, raise any issue as to the placement of the barrier arm creating a dangerous condition. Willard Public Schools' use of a barrier arm for its intended purpose did not create a dangerous condition of the property.

Finally, Appellants contend the absence of warning markings made the barrier arm a dangerous property condition. A lack of warnings or similar preventative measures does not constitute a dangerous condition of property within the meaning of § 537.600.1(2). *Boever*, 296 S.W.3d at 493-94.

Appellants did not specifically plead facts that stated a claim within the dangerous condition exception to sovereign immunity. The trial court did not err in granting the motion to dismiss on the ground of sovereign immunity. Point one is denied.

**Official Immunity**

Appellants next claim the circuit court erred in granting the motion to dismiss because the individual respondents are not shielded from liability by official immunity.

We could not summarize the doctrine of official immunity any better than our Supreme Court recently did in *State ex rel. Love v. Cunningham*:

Official immunity . . . protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts. . . .

Missouri has long-applied the doctrine of official immunity. Official immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties. The purpose of this doctrine is to allow public officials to make judgments affecting the public safety and welfare without the fear of personal liability. This is because, if an officer is to be put in fear of financial loss at every exercise of his official functions, the interest of the public will inevitably suffer. When a public official asserts the affirmative defense of official immunity, she should be afforded such immunity so long as she was acting within the scope of her authority and without malice. A finding that a public employee is entitled to official immunity does not preclude a finding that he or she committed a negligent act—because official immunity does not deny the existence of the tort of negligence, but instead provides that an officer will not be liable for damages caused by his negligence.

'Immunity' connotes not only immunity from judgment but also immunity from suit. Courts applying the doctrine of official immunity must be cautious not to construe it too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation.

Official immunity does not apply, and a public official may be held personally liable for the damages the official caused, in two narrow exceptions: (1) when a public official fails to perform a ministerial duty required of the official by law, or (2) when a public official acts in bad faith or with malice. . . .[3]

. . . .

. . . [O]fficial immunity does not apply when a public official fails to perform a ministerial duty required of the official by law. A ministerial duty is clerical. A ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials. A duty is considered ministerial when the act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to the public official's judgment or opinion concerning the propriety or impropriety of the act to be performed. The central inquiry is not whether the law confers a duty to act

---

[3] Appellants did not argue this second exception below. Even so, it is not applicable here. Two claims were styled as intentional torts, but we look to the facts alleged rather than legal conclusions. *Love*, 689 S.W.3d at 497. The facts as alleged could establish intentional policy violations, but not that a school employee performed a discretionary act with the actual intent to harm or injure J.S. *Id.*

6

but, instead, whether the public official retains *any* discretion in completing an act. The test for whether a task is 'ministerial' for purposes of a writ of mandamus is precisely the same as the test for whether that task is 'ministerial' such that official immunity will not apply. If a writ of mandamus would not have been proper to compel an official to perform an act, it should follow that official immunity protects an official from liability for injuries arising from the performance of that act. When even slight discretion exists, the duty is not ministerial.

689 S.W.3d 489, 494-96 (Mo. banc 2024) (internal punctuation, citations, and footnote omitted).

The named respondents are employees of the school district, acting within the scope of their official authority. Absent an exception, they are entitled to official immunity. ***State ex rel. Alsup v. Kanatzar***, 588 S.W.3d 187, 193 (Mo. banc 2019). Appellants contend the ministerial act exception applies because the named respondents had ministerial duties to follow school rules and duties of care regarding reporting and addressing hazardous property conditions, supervising students, providing assistance to an injured student, and notifying a student's parent of an injury.

"The fact that a statute or regulation may confer authority – or even a duty – to act in a given situation says nothing about whether the act authorized or compelled is the sort of ministerial or clerical act to which official immunity does not extend." ***Id.*** at 192. The court continued,

Thus, the relevant inquiry is not whether the law authorizes, regulates, or requires an action. Instead, it is whether the action itself is ministerial or clerical. And, even when a clerical or ministerial act appears to be authorized or required by statute, official immunity will still apply if the official retains authority to decide when and how that act is to be done. As a result, even though a statute might require a public official to act "fairly," "competently," "safely," or "reasonably" in a given situation, the performance of that action will fall within official immunity because what constitutes fair, competent, safe, or reasonable may differ from time to time, place to place, and official to official.

***Id.*** at 192–93 (internal punctuation, footnote, and citations omitted).

The acts pleaded by Appellants are not clerical, routine, or mundane acts that could be

7

compelled by a writ of mandamus. The failure to summon emergency medical assistance can be ministerial in nature if a school policy or a student's individual education plan at the time of the incident left no discretion in the course of action to be taken. ***Kemp v. McReynolds***, 621 S.W.3d 644, 655 (Mo.App. 2021). No such statutes or school rules were pleaded in this case.[4] The statutes and school rules Appellant did recite are general in nature and relate to supervision of students and reporting of hazardous conditions. Such recitations are not sufficient to overcome official immunity:

> [A]t first blush it might appear that the duty to keep the school grounds 'safe' is ministerial in character, but it is apparent on closer analysis that a great many circumstances may need to be considered in deciding what action is necessary to do so, and such decisions involve the exercise of judgment or discretion rather than the mere performance of a prescribed task.

***Jackson v. Wilson***, 581 S.W.2d 39, 44 (Mo.App. 1979) (quoting ***Meyer v. Carman***, 73 N.W.2d 514, 515 (Wis. 1955)).

The circuit court did not err in finding official immunity precluded Appellants' suit against the individual respondents in their official capacities. We deny point two and affirm the judgment dismissing Appellants' lawsuit.[5]

JACK A. L. GOODMAN, J. – AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

JENNIFER R. GROWCOCK, C.J. – CONCURS

---

[4] A plaintiff must "allege a duty *from some source*, including statutorily or departmentally-mandated, departmental rules, or orders from a superior, and breach of that duty, in order to state a claim which is not barred by official immunity." ***Stephens v. Dunn***, 453 S.W.3d 241, 251 n.13 (Mo.App. 2014).

[5] Our resolution of points one and two moots further discussion of alternative grounds on which the individual defendants could have been shielded from liability.